Parsons, C. J.,
pronounced his opinion to the following effect. We all concur in the opinion, that there must be a new trial in this case on account of the misdirection of the judge who sat in the trial, with respect to the legal effects of a rescue. We cannot admit the doctrine, that the crew of a neutral vessel may determine for themselves, that an arrest made by a belligerent is without color of right, and in consequence of such determination may forcibly regain possession of the vessel.
The belligerent having a right, by the law of nations, to visit and search neutral vessels, to prevent them from entering or leaving a port of his enemy under lawful blockade; to seize and detain them if engaged in contraband trade, or knowingly violating a blockade; and to capture and carry into port neutral vessels, which may be transporting the property of his enemy, for the purpose of condemning such property; it would be utterly inconsistent with these rights of the belligerent to allow the neutral vessel to resist by force or to be retaken by her crew, whenever they might have opportunity to overpower the officers and men of the belligerent, in whose custody she may be placed. General principles of policy and national law require that * in such cases the neutral should submit, and rely upon the justice of the tribunals of the belligerent nation to restore him to his rights, and give him indemnification, if the party arresting shall have abused his power, and without any pretext or probable cause, have subjected him to loss and damage. And if the tribunal should manifestly proceed upon unjust principles, the sovereign of the neutral country must interfere, and protect the rights and property of the citizens.
Nor would the interest of neutral nations be in any degree *449 advanced by a change of the public law in this particular; for such a change would compel belligerents on every seizure of a neutral for a supposed breach of neutrality, either to take from the vessel all the original crew, to the great disadvantage of the voyage in case there should be a release of the vessel, or to use a degree of severity in the confinement of the crew, which has not hitherto been practised; which would be exceedingly injurious to them, as well as to the general commerce of the neutral, from the discouragement it would occasion to mariners.
Neutral powers should always be willing to allow to belligerents those rights and powers, which have been established and practised upon for ages; looking to the time when, according to the ordinary course of human events, they may be obliged to claim and exercise the same, for the vindication of their own rights when violated by other nations.
A rescue therefore of a neutral vessel, arrested and detained by a belligerent armed vessel for an alleged violation of neutrality, is a good cause of condemnation, and a loss happening from this cause is not within the perils insured against by the policy, upon which this action is brought. And although it seems probable that this was not the point upon which the verdict was found for the plain tiffs, yet as the judge directed the jury expressly, that such a rescue was no legal cause of condemnation, and as we cannot determine * how far that direction influenced the minds of the jury, we are satisfied that there must be a new trial.
But as the principal inquiry has been upon another point, the determination of which will probably settle this cause, my brother Parker and myself think it proper to express our opinion upon it This point has been fully argued, and sufficiently deliberated upon by the Court; and is, whether the decree of the Vice Admiralty Court in Gibraltar condemning this vessel and cargo, is in its nature conclusive evidence, so that the plaintiffs, ought not to have been permitted at the trial to contradict it by the evidence, which was on their part submitted to the jury.
The operative words of the decree are, “ that the said vessel called the Franklin and her lading” are pronounced “ to have been unlawfully rescued and retaken by the master from the possession of the prizemaster and others, put on board thereof from his majesty’s sloop of war Ferret,-Wells, Esq. commander, whilst proceeding to a British port for adjudication, and as such or otherwise subject and liable to confiscation, and condemned the same as good and lawful prize,” &c. — It was contended at the trial that this decree was conclusive evidence of the fact of a rescue, and *450 that the condemnation proceeded upon that fact; and that the testimony exhibited by the plaintiffs to prove that such rescue did not take place, ought to have been rejected by the judge.
It is not intended to call in question the decision which took place so recently in the case of Baxter vs. The New England Marine Insurance Company. (1) The question as to the conclusiveness of decrees of Admiralty Courts, which until then was open in this commonwealth, must be considered as settled by that decision. The numerous decisions, which had taken place in England before the American revolution, and the general adoption of the English law in this commonwealth, render it probable that our mercantile * contracts have been generally entered into with a view to that law and those decisions. There was therefore a propriety in being governed by the cases cited in support of the conclusiveness of decrees, however questionable may have been the principle or policy of those decisions when first adopted and made part of the law merchant. If, therefore, no substantial difference exists between the decree considered by the Court in the case referred to, and that which is produced in the case now before us, the same judgment must follow ; the decree is conclusive, and the evidence admitted by the judge ought to have been rejected.
But we think that there is a manifest difference between the two decrees, and that, in conformity to all the cases in which evidence of this nature has been held to be conclusive, the decree now before us ought not to be so held, and that it may be controlled by other legal and sufficient evidence.
The decree in Baxter vs. The New England Marine Insurance Company, after having expressly and distinctly alleged that the vessel had violated a blockade de facto by egress, proceeds to allege that for that and other sufficient causes, she was condemned. Here was not only a direct assertion that a blockade had been violated, but also that the violation was a cause of the condemnation ; and this being a sufficient cause by the law of nations, it was immaterial whether any other causes existed or not.
But the present decree, after alleging a rescue, declares that for such cause, or otherwise, the vessel is liable to condemnation. Now, we know no rule of construction, by which it can be maintained that these words amount to a direct allegation that the rescue was even one of the final causes of the condemnation. There had been, as appears from the decree, an inquiry relative to the violation of the blockade of the West India islands; with respect to which perhaps the judge was not fully satisfied: — Admit that he was *451 fully satisfied that a rescue had actually taken place; yet * he might not hold himself obliged, under all circumstances, to condemn expressly for that cause. The natural construction of his phraseology is, that as the vessel had been rescued, she was liable to condemnation for that cause, or for some other cause not stated. Now this is far from being a direct unequivocal assertion that she is condemned because she has been rescued.
We understand the principle to be, that where it does not appear by the decree itself on what particular ground the condemnation was had, the case is to be open to evidence, as to all the points which it may be necessary for parties in interest here to establish, except the fact of condemnation. The decree in such case cannot be more than prima facie evidence; and as the underwriters upon a policy of insurance, according to the opinion of one of the judges in the case of Lothian & Al. vs. Henderson fy Al., (2) cannot be received in the Admiralty Court as a party, nor heard upon the trial; so ought not the assured to be shut out from proving the truth of his case, and showing that he is entitled according to the fair principles of his contract to be indemnified.
The form of expression used in this decree is but of recent origin, and upon inquiry we are led to suppose that it has been adopted for the very purpose of avoiding the inconvenience obviously arising to distant and innocent parties, from their being bound by decisions in admiralty courts, where they have had no opportunity of asserting their rights.
Even in England, where the doctrine of the conclusiveness ot sentences of condemnation has been long established, and from whence it has been transported into this country, it seems to be adhered to rather from respect to precedent than from attachment to the principle; for great inconveniences are acknowledged to have flown from it.
The case of Fisher vs. Ogle (3) proves how willing Lord Ellen borough and the other judges were to escape from a doctrine, which they found to bear hard upon the * parties to an insurance contract. A vessel represented American was insured, and upon her voyage was captured by a French privateer. The sentence of the French court stated that it resulted from the papers on board, (fee. «fee., that the expedition, the cargo, and the operations of the captain were for the account of the Brothers Gedd.es, merchants of London, who had, to mask the English property of the outfit, borrowed the American flag, <fec., *452 and then condemned the ship as good and valid prize, and confisca ted the ship and cargo. Now, it is apparent that the Court proceeded upon the ground that the ship and cargo were English and not American; and yet because this was not explicitly declared in the sentence, Lord Ellenborough let the assured in to prove that his representation was true; and on motion for a new trial the other judges concurred with him, and a rule was denied. His lordship said he must look to the adjudicative part of the sentence, and. would not fish for a meaning. He said too, “ It is by overstrained comity that these sentences are received as conclusive evidence of a fact, which they positively aver, and upon what they specifically profess to be founded.”
Now, if we look to the adjudicative part of the sentence in this case, we find the ship was condemned as good and lawful prize; if we look for reasons, we shall find that she was so condemned, because she had been rescued, or otherwise; that is, for the reason specifically set forth, or for some other reason which is not stated.
Upon the whole I think that we go full far enough, in holding sentences to be conclusive, when they distinctly and specifically state the causes of condemnation ; but that parties in this country, to contracts made here, ought not to be bound by a trial in a foreign forum, in any cases, but those which come strictly within the judicial decisions upon the subject. I am therefore of opinion that the evidence to contradict the allegations in the decree produced in the trial of this action was rightly admitted.
Parker, J.,
concurred.
* Sewall, J.
The general question in this case is, whether the loss proved, happened by a peril insured against? Or, in other words, is the total loss, averred and proved in this case, to be attributed to causes which excuse the underwriter ?
The insurance is for the round voyage, or to and from the West Indies. After the commencement of the return voyage, when bound from Martinico to the United States, the vessel, laden with a homeward cargo, was captured by a British ship of war, and ordered for Bermudas. Before she arrived there, the American master and the part of the crew remaining on board, regained the possession of the vessel by some means or other, and were proceeding on their return voyage, when they were again captured by another British armed vessel, carried to Gibraltar, and there the vessel and cargo were finally condemned and sold for the use of the captors. By these events a total loss has happened ; but to this demand therefore the underwriter objects, that the capture and condemnation were the consequences of a breach of neutrality ; and that the vessel and *453 cargo had been regained from the first captors by a rescue, which produced the sentence of condemnation upon the second capture.
In the argument the counsel for the plaintiffs have endeavored to maintain, that the loss demanded upon their policy is to be attributed exclusively to the first capture; because they gave notice to the insurers, and offered them an abandonment of all the property insured, upon intelligence of it, before the subsequent events were known; and this offer is insisted on, as a transfer to the insurers from the time of the first capture, being, it is said, an abandonment upon intelligence true in fact, oí a property which has never been restored, or effectually relieved from the disaster, which gave occasion to the abandonment, and justified it.
The first capture, separately considered, as it must be for the principal purpose of this argument, was not necessarily * a total loss; it might have proved only a very short detention, and ceased before the abandonment was made.
The direct consequences of the first capture, in this view of it, are wholly unknown; and at any rate the consequences have been aggravated by the subsequent conduct of the master. The vessel was ordered for adjudication to Bermudas. If there had been no breach of blockade, the legal presumption must be, I think, that a speedy discharge or acquittal would have ensued upon her arrival there ; and the first capture might have proved an interruption only, and not a total and inevitable loss of the property or voyage insured. To justify the abandonment, therefore, the events subsequent to the first capture are necessarily connected with it; and then it is immaterial whether the loss be attributed to the first or the second capture, or to both events as the proximate or immediate causes. The loss is a capture and condemnation as prize; and the question still is, — To what cause is the condemnation, which constitutes the total and final loss of the vessel and cargo, to be attributed ? The insurers say, to a rescue, or if you please, an attempt to rescue, after the first capture; which was a forfeiture of the neutrality of the vessel and cargo.
As the Court concur in an opinion, that a vessel insured as neutral is to be ' conducted with a suitable regard to her neutral character, so far as that depends upon the master and other agents entrusted by the assured ; and that a loss incurred, and which becomes total, in consequence of a voluntary forfeiture of neutral character, is not a loss by any peril insured against by the policy in question ; and that a rescue, or an attempt to rescue, or a resistance to search, where a neutral vessel is in the possession or power of a belligerent armed vessel, is a forfeiture of neutrality, I shall not make any observations on these points.
*454 But the point, upon which I have the misfortune to differ in opinion from the Chief Justice and my brother Parker, is as to the effect of the proof relied upon for the defendant in this case.
*The capture, as stated, is proved by oral testimony, and the condemnation by an authentic copy of the proceedings in the prize court at Gibraltar. Whether this document is produced by the plaintiffs, or by the defendant, it forms a necessary part of the evidence of the loss demanded, and is indispensably and necessarily admitted in the inquiry. If there is evidence that the vessel was captured and detained, there is also evidence of her condemnation as lawful prize to the captors. And if from the same documents there is conclusive evidence of a breach of neutrality, by which the condemnation was justified upon the rules and principles of the public law, common to all civilized nations, then the insurers are excused.
According to the decree of the prize court given in evidence in this case, the judge pronounced the vessel called the Franklin, and her lading, to have been unlawfully rescued and retaken from his majesty’s sloop of war Ferret, &c., whilst proceeding to a British port for adjudication ; and as such, or otherwise, subject and liable to confiscation, and condemned the same as good and lawful prize, &c.
Now this decree or sentence of a foreign court of admiralty, as to that which is clearly expressed in it, is conclusive evidence against the plaintiffs, and is not to be controverted by them in a suit upon a policy of insurance. This proposition is established by the decision of this Court in the case of Baxter vs. The New England Marine Insurance Company; and I shall not go again into an examination of the reasonableness or authority of that decision. There is no question, whether we are bound to adhere to it; and for my part, I am entirely convinced that it was consonant to a long course of decisions upon the same subject, which are received as authorities with us; and as a rule of evidence, that it is not to be departed from without manifest inconveniences of very serious import. But however this may be, it must be now considered *as the rule, and an implied condition of the contract of insurance, that upon a capture by a belligerent, if a condemnation ensues, explicitly made upon an alleged forfeiture of neutrality, the underwriters are excused. And I cannot bring my mind to doubt, although strongly induced to it by the respect justly due to the contrary opinion from mine, that in this case the decree of the prize court contains, and there is clearly expressed in it, a condemnation for an unlawful rescue; that this is definitively pronounced to be the cause of condemna *455 lion; and that the phrase “ or otherwise ” has no effect to exclude, or to render doubtful, what is stated and declared; but only to include in the sentence any other causes, if any others should be found; intimating the possibility of them, without affirming that there are any. This is a matter to be decided rather by perception than argument; and I shall not attempt any.
• As to the necessity for a new trial, upon the direction given respecting the effect of the testimony, admitted to control the admiralty decree, I fully concur in granting it.
Sedgwick and Thatcher, justices, were not present at the argument or decision of the cause.

New trial granted.

 6 Mass. Rep. 277.

 3 Bos. & Pul. 499.

 1 Campbell's Nisi Prius, 419.