## Case No. 17,253.

### WATERBURY v. MYRICK.

[Blatchf. & H. 34.][1]

District Court, S. D. New York. Feb. 6, 1828.

RECOVERY OF SALVAGE—ACTION AGAINST CO-SALVOR—PROCEEDING IN REM—MARITIME CONTRACT—ADMIRALTY JURISDICTION.

1. An action will lie in rem, to recover a salvage compensation against the proceeds of salved property converted into specie, provided the same action would lie against the property itself.

[Cited in Studley v. Baker, Case No. 13,559.]

2. The owner of a vessel which is employed in a salvage service may recover compensation for such employment out of the salved property, either as a co-salvor, by uniting with the officers and crew of the salving vessel in the suit, or by bringing it himself in his own right, in case they refuse or neglect to join.

3. An action in personam will lie by one salvor against a co-salvor, to recover a proportionate share of the salvage compensation, when the whole is received by the latter, and he withholds the share of the former.

[Cited in Gates v. Johnson, Case No. 5,268; McConnochie v. Kerr, 9 Fed. 51; McMullin v. Blackburn, 59 Fed. 178.]

4. An action in rem will not lie against money earned by a ship-master and supercargo as a salvor, whilst in the general employ of the libellant as owner of the vessel and cargo.

---

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

5. The owner of a salving vessel is admitted to share in the salvage reward solely on the ground of the risk and damage to which his property is or may be subjected, and consequently he can come in as a co-salvor only where his vessel has been the direct means of rendering the service for which salvage is awarded.

6. Where a ship-master did not use the vessel of the libellant, but pledged funds belonging to the libellant and others to procure another vessel in which the salvage service was effected: *Held*, that the libellant could not proceed in rem against the salvage money as a co-salvor.

7. Where, in an action in rem by an owner of a vessel, to recover a share of the salvage money earned by the master in saving a cargo of a wrecked vessel, it appeared that the cargo was saved, not from the vessel wrecked, but from an island on which it had been landed by her passengers, and that the salvage was not awarded by a competent court, and there was no evidence to show the principles or rates on which it was adjusted: *Held*, that the libellant was not entitled to proceed in rem as a co-salvor.

8. Where a master was instructed, in his home port, to sell a cargo at the port of destination according to his judgment, and he landed the cargo there and proceeded to dispose of it on shore: *Held*, that this was not a maritime contract cognizable in an admiralty court.

[Cited in Peck v. Laughlin, Case No. 10,890.]

9. Where a master, so employed, abandoned the sale of the cargo in order to effect a salvage service in a vessel procured by pledging the proceeds of the cargo: *Held*, that this was a breach of contract, for which no action lay in a court of admiralty.

[Cited in Cunningham v. Hall, Case No. 3,-481.]

This was a libel both in rem and in personam. It alleged that the schooner Abigail, of which the libellant was sole owner, sailed from New-York on the 5th of December, 1826, bound for Tuxpan, in Mexico, with a cargo of goods on board, belonging in part to the libellant [Ebenezer Waterbury] and in part to others, and arrived there in the latter part of the same month; that the respondent [James Myrick] was master of the Abigail, and also consignee of her entire cargo, part of which was there disposed of for $3,800; that soon after the arrival of the schooner at Tuxpan, and before the cargo was all sold, news was received there of the wreck of the brig Greek, with a valuable cargo on board, in the Mexican seas; that the respondent thereupon, abandoning the schooner to the care of the mate alone, and suspending the prosecution of the affairs of his vessel and cargo, proceeded upon a salvage expedition with her crew, having procured a small vessel for that purpose by pledging the funds of the libellant; that, with the vessel so procured, and by the aid of the crew of the libellant's schooner, and during the suspension of the libellant's affairs, the respondent succeeded in saving a part of the cargo of the Greek, to the value of $13,000, and in delivering the same at Vera Cruz. subject to his claim thereon for salvage, which was afterwards awarded, to the amount of 56 per cent., or $7,312, the greater part of which was received by the respondent; that, by reason of the respondent's delay and neglect, the Abigail became unseaworthy, and her value, namely, $1,500, was lost, or nearly so, to the libellant; and that the respondent, in April, 1827, had shipped to New-York a bag of dollars, and afterwards the further sum of $1,800, parts of the said salvage by him received. The libel prayed that the said moneys might be seized and the claimants thereof be cited to appear, and that the respondent might be arrested and held to answer, and that the claim of the libellant might be satisfied out of the salvage moneys and otherwise.

The answer of the respondent alleged that previous to sailing he received a letter of instructions from the agent of the libellant, which was signed also by the libellant himself, authorizing him to sell the cargo of the Abigail at Tuxpan, but leaving the management of the affair to his judgment, with directions to acquaint himself with the trade, prospects, &c., of Tuxpan, and further authorizing him to sell the schooner, should a suitable opportunity occur, and also requesting him to make some exertions to dispose of her. The answer further alleged that other parties besides the libellant consigned goods by the Abigail to the respondent, which other consignors, it was claimed, ought to be made parties to the suit; that the respondent, not being able to dispose of the cargo at public sale, deemed it most for the interest of all concerned to sell it at retail, and accordingly hired a store and proceeded so to do; but that, before the cargo was sold, information was received at Tuxpan of the wreck of the Greek, with passengers on board, at the Triangle Islands, in the Mexican seas, from the mate of that vessel, who had been despatched, with one of the crew and a passenger, to procure relief, and who applied to the respondent for that purpose; that the respondent endeavored to procure relief from the commandant of Tuxpan, but without success. and thereupon hired a small schooner of sixteen tons, and deposited with the alcalde of Tuxpan, as security, $1,000, belonging in part to the libellant. in part to the other consignors, and a considerable part to himself on account of commissions and services; that he left the Abigail in charge of the mate and two men, and the store in charge of a Spanish clerk, by whom the residue of the cargo was sold; that he did not take with him any of the crew of the Abigail. with the exception of one boy, and did not go upon a salvage expedition, or with any other intention than that of saving the lives of those on board the Greek; that. on the 22d of February, he came in sight of the Greek, and discovered that her passengers were landed upon an island two or three miles from the reef where the brig lay. the master and crew having escaped in the long-boat; that he took from the island these passengers, with

their provisions and a small portion of the cargo which could be conveniently carried, and, without making an attempt to approach the brig herself, started the same day to return to Tuxpan; that he was driven by contrary winds to Vera Cruz, and there reported himself to the American consul, and preferred a claim for salvage, and that 56 per cent. of the value of the cargo was awarded to him by referees, to whom the matter was referred by a competent court; that the cargo saved from the Greek amounted to $13,333, but that the salvage moneys received, after deducting expenses, amounted to $5,065 97 only; that of this sum $2,-171 50 were awarded to the owner of the salving vessel; that the cost of repairs, and other expenses and losses, as set forth in a schedule annexed to the answer, reduced the amount of salvage received by the respondent to $1,791 12; that, on his return to Tuxpan, he found the Abigail unseaworthy, and in a leaky condition, as she had been during the voyage, and her bottom worm-eaten, as he believed, and that she soon after sunk in consequence; that thereupon he caused her to be surveyed by the commandant of the port and others, by whom she was pronounced unseaworthy; that he afterwards caused her to be surveyed a second time by other parties, one of whom was a carpenter, and they reported that she could not be repaired for a sum less than her value, whereupon he caused her to be sold at auction for $500; and that there existed in Tuxpan no tribunal to which resort could be had to procure a more formal condemnation.

The letter of instructions to the respondent, referred to in the answer, was given in evidence, and also a paper purporting to be a copy of an authentic document, to the effect that Captain James Myrick had appeared before the second constitutional magistrate of Vera Cruz, and demanded salvage for saving part of the cargo of the brig Greek, and that, there being no law in that country relating to salvage, two arbitrators were appointed, who reported one in favor of 50 per cent., and the other of from 50 to 60 per cent., and that thereupon the magistrate above-named granted 56 per. cent., to which the arbitrators and all parties agreed, and that the paper was accordingly signed by the magistrate and all the parties. All the other important facts are stated in the opinion of the court.

Daniel Lord, Jr., for libellant.

I. The respondent was the servant of the libellant, being employed not only as ship-master, but as general servant for the entire adventure, and the libellant, as his master, was entitled to all his time and services, and therefore to his present earnings, namely, the specie arrested in this action. Hart v. Aldridge, Cowp. 54; Blake v. Lanyon, 6 Term R. 221; Co. Litt. 117a, Harg. note. By bringing a suit for the thing earned, the libellant waiv-ed the tort, and assented to the service, so that it became a service rendered by his servant, with his assent, and without any waiver of his right to the earnings. Lightly v. Clouston, 1 Taunt. 112. In regard to the case of Mason v. The Blaireau, 2 Cranch [6 U. S.] 240, where the apprentice's share of a salvage remuneration was decreed to himself alone, it is to be observed, 1st. That the ship-owners were compensated out of the earnings of the apprentice; 2dly. That the exposure was of life, and not merely a rendering of services; 3dly. That the master is spoken of as having been already sufficiently compensated.

II. The libellant, if not entitled to all the specie, as master of the respondent, was at least entitled to a part as a co-salvor. The grounds on which ship-owners receive a share of salvage are, 1st. The risk to which their property is exposed; 2dly. Motives of public policy, that they may permit their masters to render salvage services; and, 3dly. Because their property is the instrumentality by which the salvage is effected. The Haase, 1 C. Rob. Adm. 286; The Amor Parentum, Id. 303; The San Bernardo, Id. 178; Taylor v. The Cato [Case No. 13,786]; The Mary Ford, 3 Dall. [3 U. S.] 188; Mason v. The Blaireau, 2 Cranch [6 U. S.] 240. (1) In this case the property of the libellant was risked, and his funds were pledged. The privity between the respondent and the libellant was closer than that between the respondent and the other consignors, and the funds should be presumed to be the libellant's rather than theirs. Kemp v. Coughtry, 11 Johns. 107. The respondent himself had no interest in the funds, because the sales were not completed and his commissions were not earned. And other property of the libellant was risked, namely, the Abigail herself, she having been left in the care of others, in violation of the trust reposed in the respondent, and having been lost in consequence of such neglect. Moreover, other interests of the libellant were jeopardized, the custody and sale of the cargo having been entrusted to strangers, and no attempt having been made to explore the market and resources of Tuxpan, or to sell the Abigail, according to the letter of instructions. (2) A liberal allowance should be made to the libellant on principles of public policy, that ship-owners may be induced to throw no obstacles in the way of their masters engaging in such enterprises. (3) The salving vessel could not have been procured at Tuxpan without the pledge of the libellant's funds, so that they were the instrumentality by which the salvage was effected. All the grounds upon which salvage is granted to owners of vessels exist in this case to entitle the libellant to salvage.

III. The question is one of distribution of salvage earned by the respondent at sea, in his capacity of ship-master; and salvage and its incidents are exclusively of admiralty jurisdiction. The Cato [supra]; Brevoor v. The Fair American [Case No. 1,847]; Bond v. The Cora

[Id. 1,620, 1,621]; Mahoon v. The Glocester [Id. 8,970]; Rowe v. The Brig [Id. 12,093].

IV. The other consignors were mere freighters, and should not be made parties unless they see fit to appear and intervene.

V. The award of salvage at Vera Cruz cannot be regarded by the court. At all events, that award cannot affect the rights of the libellant as a co-salvor, but is only good as against the former owner of the property saved.

Theodore Sedgwick, for claimant and respondent.

BETTS, District Judge. The competency of this court, as a court of admiralty, to entertain this action, will not be made a point of decision, although that question was largely discussed by counsel on the hearing. It is not a point specifically in issue, no exception having been taken by the pleadings to the jurisdiction of the court, and the case not being one of sufficient doubt to induce the court to hesitate in taking jurisdiction in the matter.

In disposing of the case, I shall assume, (1) That the action in rem will lie by the owner of the Adelaide against the specie attached, provided it would lie against the merchandise saved from the cargo of the brig Greek. (2) That the owner of a vessel which is employed in a salvage service may recover compensation for such employment, as a co-salvor, out of the salved property, either by uniting with the officers and crew of the salving vessel in the suit, or by bringing it himself in his own right, in case they refuse or neglect to join. (3) That an action in personam will lie by one salvor against a co-salvor, to recover a proportionate share of the salvage compensation, when the whole is received by the latter, and he withholds the share of the former. The remaining points which demand consideration relate, first, to the action in rem, and, secondly, to the action in personam.

(1) Does the libellant make out a salvage interest belonging to him in the specie attached in this action? It is only in the capacity of co-salvor that he can proceed against this specie. To support an action in rem the libellant must show a proprietary interest in the money itself, as the produce of or substitute for property belonging to him. The action cannot be maintained on the ground that the relation of master and servant subsisted between the parties. It is true the libellant has sustained an injury by the conduct of the respondent, who was both master of the vessel and consignee of her cargo, of which the libellant was also part owner. The nature of the transaction between the parties required of the respondent strict attention and fidelity in the sale of the cargo, the business being entrusted to his personal judgment and discretion. Yet, during the time he was bound to render all his services to the libellant and to the other consignors. he withdrew himself from that service, and earned $1,800 in a different employment. However praiseworthy his motive may have been, if his object was to rescue lives or property in peril, he cannot justify himself by that motive in abandoning his trust, and devoting his personal services and the money of·the libellant to an expedition resulting in his own profit. This abandonment of his trust, does not, however, give the libellant authority to proceed against the moneys attached. In the first place, the money was obtained by the respondent on his claim for services as a salvor. These services are personal and hazardous, and are compensated upon other considerations than those of time and labor bestowed in rendering them, though these are important elements in fixing the amount. Even if the libellant could show a right to the proceeds of the ordinary services of the respondent, outside of his duty as master, he could not claim the extraordinary rewards which the respondent might receive for meritorious acts of bravery or charity. This was the principle of the case of Mason v. The Blaireau, 2 Cranch [6 U. S.] 240, 262, 270, where it was held that a master of a ship could not claim the salvage money which his apprentice had earned, but that it belonged to the apprentice himself, notwithstanding the right of his master to his time and ordinary earnings. Besides, the right of the libellant to the personal services of the respondent must be measured by the contract, direct or implied, between them, and that cannot be construed to give him a right to specific moneys gained by the respondent otherwise than in his capacity of master of the schooner and consignee of her cargo. Nor could the libellant attach such earnings by admiralty process, upon an equitable claim to participate in them, without showing a legal title in himself to those proceeds. Accordingly, if the contract is violated, the redress of the libellant is by action for damages for the breach; or, if he may waive the tort, and regard the abstraction of his funds as money had and received by the respondent, or borrowed by him, he can have no higher remedy for such right than the ordinary action at law to recover it back, and in neither case has he a privilege to arrest the money and hold that answerable in kind.

The libellant, then, can proceed in rem only by making out a salvage interest in the specie attached. The salvage interest claimed by him is not acquired in the ordinary way, by the use of his vessel in the enterprise, and in aid of the salvage service rendered by the master and by the men in his employment. The libellant's vessel was left in port, and the respondent obtained one belonging in Tuxpan. in which the adventure was carried out. He used for this purpose

$1,000, which belonged in part to the libellant, but not wholly, for it was the proceeds, but in what proportions is not shown, of the outward cargo shipped by various owners, and entrusted to the master to sell.

The maritime law empowers a master to employ, in a salvage service, a vessel under his command, and to put at hazard the interests of her owner; and it is for this reason only, that, upon considerations of general policy, the owner is indemnified for the risk to which his property is exposed, by being, as it were, novated as co-salvor. The owner's claim to participate in the salvage reward rests always upon the risk and damage to which his property is or may be exposed, and on no other ground. Mason v. The Blaireau, 2 Cranch [6 U. S.] 240, 242; The Mary Ford, 3 Dall. [3 U. S.] 188; Bond v. The Cora [Case No. 1,621]. But, in this case, the respondent was not, as master of the brig, authorized by the maritime law to devote the funds in his hands to these objects. It was a wrongful disposition of the money by the respondent, and does not import a voluntary contribution of it by the libellant; and, if the libellant may waive the tort, the money so used would not constitute the libellant a co-salvor. To this it may be added, that the funds so employed were not committed to the respondent for the uses of the voyage, but came into his hands abroad, as consignee of the cargo. Strictly speaking, salvage is the reward of those who engage in the salvage service, and is participated in only by those who actually effect the rescue. The San Bernardo, 1 C. Rob. Adm. 178. The owner of the vessel is admitted to participate in the reward by courts of admiralty, upon equitable considerations, both that the vessel is usually an efficient instrument in the service, and because of the risk to which their property may be thus subjected. But the principle on which others than actual salvors are permitted to share in the salvage reward stops there. The libellant could not have sustained an action, as a salvor, against the merchandise saved from the brig Greek, and therefore he cannot, in that capacity, proceed against this specie.

These are impediments to an action in rem, which are not removed by any recognised principle of maritime law. The libellant claims, however, that though his vessel was not employed by the respondent in earning the salvage reward, yet his money was employed to procure another vessel for that purpose, and that the money may therefore be regarded as the salving instrument. If it be an admissible principle in the law of salvage that the owner of a vessel may come in with a claim for a proportion of the reward earned by his master in a salvage service, upon the ground that the master was enabled to render the service by using the owner's money, though the owner's vessel was not employed, still, in this case, there is the further objection that it does not

appear that the respondent acted in his character of master of the Adelaide. On the contrary, his representative capacity, if any, was that of consignee and agent of all the shippers of the cargo; and accordingly the libellant fails to establish the important element in a salvage claim, to wit, that the money arrested is the earnings made by his property employed for the service by the respondent, whilst acting as his master. Besides, in this case, there is no certain salvage reward proved to have been received by the respondent. The cargo of the Greek was not rescued at sea, nor taken from the ship in a perishing condition. It was found landed on one of the Triangle Islands, and was removed from that place by the respondent to Vera Cruz. I lay out of view what purports to be the order of the second constitutional magistrate of Vera Cruz. That order is accompanied by no evidence of the competency of the magistrate to exercise admiralty powers, or that a suit was instituted, or any judicial proceeding had in the case. Cheriot v. Foussat, 3 Bin. 220, 250; Robinson v. Jones, 8 Mass. 536. The paper can be regarded, if evidence at all, as no more than an adjustment, assented to by the parties named therein; and the case stands as if the compensation had been paid by agreement, without the interposition of any judicial authority. There is, accordingly, no record evidence that the respondent is in possession of moneys legally awarded to him as salvage, so that a co-salvor could make common title to share in them. The respondent came into possession of the money, not by the decree of a maritime court for a salvage service, but by a private arbitrament, and his compensation must be considered as awarded in part for the relief afforded the company of the Greek, but no means are furnished in the proofs for judging to what degree. If the pleadings in the case were such as to permit the trial of the questions of salvage and of the amount of compensation due to the respondent, all the meritorious parties are not before the court, nor is there evidence to justify the court in presuming that the services rendered to the property brought to Vera Cruz by the respondent merited a reward of $1,800. Considering the question of salvage compensation as an open one in the case, the court is not enabled to say whether five hundred dollars or even one hundred dollars, would not be an adequate reward for all that was done for the benefit of the property out of which this sum of money was detained, much less to pronounce that sum to be a fixed amount of which the libellant may demand a share in proportion to the amount of his money and the value of the time of his captain employed in obtaining it.

Again, there is ground upon which to raise a more serious objection to any right to salvage in this case. The pleadings are not framed on either side to meet it, nor has the testimony put the court in possession of facts enabling it to pass understandingly upon the point as

to whether the property brought by the respondent from the island to Vera Cruz was legally subject to a salvage charge. I have already stated that no evidence is furnished that it was declared to be so by a maritime tribunal. The libellant can make no color of title to this specie as a co-salvor, without satisfactory proofs that it is salvage money, and as such subject to his equitable lien. It would be a question for decision, whether the cargo brought into Vera Cruz could be proceeded against and condemned by a maritime court for a salvage compensation. It had been rescued from the wrecked vessel, and carried ashore by the passengers, without the respondent's aid or participation; and, if it was subject to a salvage charge, that prima facie would attach to it in favor of those who rescued it from the sea, and not in favor of those who merely transported it afterwards to a proper place for sale.

In my opinion, either of the views above suggested is sufficient to free this money from liability to arrest by the libellant in the present action, and I therefore decide that he has not shown himself entitled to proceed in rem against it.

There is a stronger show of right to sustain this action in personam against the respendent, on the ground that he abandoned wrongfully the vessel and business entrusted to him by the libellant and others, and went upon a sea expedition, out of which he realized large profits. There is an impressive equity in the demand of the libellant, that the respondent should not be allowed to desert his trust to secure a personal advantage, without being made to respond for the damages caused thereby; and there is force in the argument that he violated a maritime contract, and committed a maritime tort, by his abandonment of the vessel and of his command. I have been disposed to think that this court was the proper forum in which to seek a remedy for the wrongful act, and that the contract entered into by the respondent was of a maritime character. I am in no way disposed to submit to the narrow doctrines of the English courts of law, which fix at this day the boundaries of admiralty jurisdiction. I shall always endeavor to uphold that jurisdiction in the measure which is allotted to it by the constitution and laws of the federal government, and to sustain the action of this court up to the limits recognised by our own national policy and laws.

The engagement entered into by the respondent to superintend the sale of the cargo on shore at Tuxpan comes within the actual claim of jurisdiction for courts of admiralty made by the civil lawyers, Zouch and Godolphin, and in the ancient sea laws. Judge Winchester selects out of the long enumeration by Zouch of subjects of admiralty jurisdiction, the following: "Whatever is of a maritime nature, either by way of navigation upon the seas, or negotiation at or beyond the sea, in the way of marine trade or commerce." Stevens v. The Sandwich [Case No. 13,409]. Yet, I do not feel satisfied that the employment in question, whether regarded as resting upon contract or upon abandonment admitted to be a wrongful neglect of duty, was of a quality to afford foundation for an action in an admiralty court. It is a fundamental principle touching the powers of those courts, that the subject matter offered to their cognizance must be of a maritime character, in order to their exercise of jurisdiction over a case or a cause of action not arising upon the high seas. De Lovio v. Boit [Id. 3,776]; Plummer v. Webb [Id. 11,233]; The Mary, [Id. 9,187]. And, in the present case, the libel must make a case resting upon a contract of the respondent having relation to his acts and undertakings as master of the schooner, or to services at sea outside of his duties as such master, or to some tortious act prejudicial to the libellant committed by him at sea.

The allegation of the libel that the respondent abandoned the Adelaide, and went upon a salvage expedition, taking with him part of her crew, if sufficient to bring the case within the jurisdiction of this court, either as a wrongful act in respect to the vessel, or a breach of his obligation to her owner, is not supported by the proofs. The letter of instructions from the ship's husband, approved by the libellant, clothed the respondent with a large discretion in conducting the voyage, in respect to both the vessel and her cargo. He was intrusted with almost an absolute discretion, as to the latter, to make sale of it in the manner most advantageous, in his judgment, to the owners. He was also charged, rather emphatically, to sell the vessel if practicable. This broad discretion was granted him, because the shippers were ignorant of the population, wants or resources of the port of destination. In the execution of these powers, the respondent landed the cargo at Tuxpan, hired a store, and undertook to dispose of the cargo on land himself, by wholesale and retail. Whilst so engaged in the town, he left that employment, and entered upon the adventure in question. The respondent, then, was away from the schooner, acting as storekeeper and salesman, on shore, by the authority of the libellant. In my opinion, the breach of this duty and of his implied contract to devote himself wholly to the service and interests of the owners of the cargo, supplies no cause of action in this court. The contract to become consignee and salesman of the cargo is not maritime in its character. It was purely an engagement on land, to be executed on land. His duty and responsibility under it are not to be distinguished from what would have been those of a resident merchant of Tuxpan who had been made consignee of the cargo. A consignee who takes his appointment at the port of departure, and carries it with the goods across the ocean to the port of destination, is under no more of a maritime contract in respect to the consignment than if he were appointed in the place of sale. The engagement to sell a

cargo at the port of destination is of like nature with a contract to purchase one at the place of departure, and that manifestly is not now recognised in law as pertaining to admiralty cognizance. A contract between consignor and consignee is no more a subject of maritime jurisdiction in favor of the former than of the latter. The remedy of both parties lies in a court of common law. To that tribunal the libellant would have been obliged to resort for redress, had the same cause of action arisen against a resident merchant of Tuxpan, or even against a supercargo sent with the goods, with power to sell them in Mexico.

Then, as to the supposed tortious conduct of the respondent in abandoning the Adelaide and taking with him a part of her crew, it is to be borne in mind that there is no satisfactory evidence that his being away from the vessel was a dereliction of duty or a breach of his implied obligation as master. His absence was not only permitted but enjoined upon him by his instructions, if he considered it best for the interest of the shippers of the cargo. To make it a breach of duty, or a tort, to employ two of the men away from the vessel for his private profit, it should appear that the schooner was prejudiced by the act, or that some interest of the libellant was neglected, to his damage. But it is not proved that the loss or deterioration of the schooner was owing to any act or omission of the respondent. If any damage is to be implied, it would be merely nominal, because the vessel must necessarily have remained in port until her cargo was disposed of, and, from the evidence which has been put in, though imperfect, it would appear that the state of the winds and the draught of water at the bar of the harbor would have prevented her going to sea during the time her master was absent. There is no positive evidence as to the condition of the vessel, but, from her sinking so suddenly in consequence of the injury to her bottom by worms, it is to be inferred that she was not seaworthy. The ultimate loss is very probably attributable to the course taken by the master to make sale of the cargo. But whatever error of judgment he may have committed, there was in that no violation of his duty or of any contract. Nor, for the reasons above stated, would the taking the two boys from the vessel, in the manner and at the time it was done by the respondent, afford any cause of action against him because of any actual injury to the libellant.

Upon the whole case, I do not think that the libellant is entitled to maintain his action in this court. The action in personam, however, bears so much more the aspect of one belonging to a maritime court than the one in rem, that if the suit were brought against the respondent alone, I should hesitate to impose costs on the libellant. But, as he has made the gravamen of his action the right to maintain it in rem against the specie, and has failed on the merits in that, I think the decree must follow the usual course, and carry costs to the successful party. Libel dismissed, with costs.