THE SAME *against* THE SAME.

THIS was an action on a policy of insurance on the *freight* of the same ship, valued at the sum insured, being 2,500 dollars, and for the same voyage, as stated in the last case; and a verdict was found for the plaintiff, subject to the opinion of the court, on a case containing the same facts.

*Colden*, for the plaintiffs. The vessel having been totally lost by one of the perils insured against, there must be a total loss of freight. No freight was earned. A *pro rata* freight is due when goods are delivered at an intermediate port of necessity, to the consignee or his agents. Freight was payable on the delivery of the cargo at *Bremen*. It was never the intention of the master to go to *Amsterdam*. He was forced by necessity to go into the *Texel*. It was, therefore, a port of necessity, as much as if *Amsterdam* had not been inserted in the policy. All the facts show, that *Bremen* was the port of destination, and that there was no intention to touch at *Amsterdam*, or deliver any part of the cargo at that place. The 25 boxes of *Peruvian* bark, intended for the Messrs. *Willincks*, were landed by order of the government, and the rest of the cargo was seized, on board of the lighters, and detained by the government. The cargo was never delivered at the port of destination, or to the consignee or his agent, at a port of necessity.

It will be said, that the policy contains a clause warranted free from seizure in port. But that clause does not apply to the freight.

the freight paid. The embargo being taken off, the ship, with the rest of the cargo, returned to the *Texel*, for the purpose of pursuing her voyage to *Bremen*, but was further detained by a general regulation of the government, for four days, at the *Texel*, and while so detained, a violent storm arose, and for greater safety, and with the advice of the crew, the cables were cut, and the ship run on shore; in consequence of which, she was so much injured as not to be worth repairing, if got off, which was deemed impracticable. The cargo having been discharged on board of lighters, was seized and detained by order of the government, and carried to *Amsterdam*, where it was put into the king's stores. The cargo was not consigned to any particular place or person; but was to be delivered to the order of the shippers; and both ship and cargo were placed under the direction of the supercargo, (a part owner and one of the insured,) as to the destination of the ship and management of the cargo.

It was held, that to entitle the plaintiffs to *freight*, there must have been either a delivery of the cargo at *Bremen*, or a voluntary acceptance of it at the *Texel* or *Amsterdam*, by the consignee or supercargo, or a refusal by him, upon an offer made to carry on the goods in another vessel. That if the master or shipowner neglects to forward the goods by another vessel, when he has it in his power to do so, in consequence of which the freight is lost, the insurer is not liable. That it was incumbent on the insured to show that the master was prevented by some other cause than the *seizure* of the goods, from carrying them to *Bremen*, otherwise the omission to carry them, was imputable to the *seizure*, as the apparent and proximate cause.

*Marginal note:* Insurance "on freight from *New-York* to *Bremen*, with liberty to touch at *Amsterdam*, *Rotterdam*, and *Tonningen*, for a market, warranted free from seizure in port." The ship having sprung a leak, the master, without any intention of going to *Amsterdam*, but from necessity, put into the *Texel*, where the ship was repaired, but was detained by an embargo, and ordered to *Amsterdam*. During this detention, a small part of the cargo, (a quantity of *Peruvian* bark) by order of the government, and against the will of the master, was delivered, and the freight paid.

ALBANY,
Jan. 1812.

SAME
v.
SAME.

The vessel was never seized, but the vessel and freight have been lost by the perils of the sea, against which the insurance was made. If there had been no seizure, yet the master was not bound to carry on the goods in another vessel, but might have abandoned them. And if, after the accident arising from the perils of the sea, he was prevented from carrying the goods, by another peril not insured against, still the insurer is liable.

*C. I. Bogert* and *S. Jones*, jun. contra. The whole of the freight was earned; for *Amsterdam* may be considered as the port of destination. The *bark* was consigned to the *Willincks*, who obtained a permit for its being landed, and paid the freight. But suppose *Amsterdam* to be a port of necessity, then the plaintiffs were entitled to a *pro rata* freight;* for the goods were delivered to *Field,* one of the plaintiffs, and who was *consignee* and *supercargo.* The goods were discharged into lighters by the master, under the direction of *Field;* and the moment they were delivered on board the lighters, the freight was earned. The goods were carried up to *Amsterdam* before they were seized. If they had not been seized, they would have been in the hands of the consignee or his agents. If they were prevented, by the seizure, from coming to the possession of the consignee, then it is a loss, for which the defendants, under the clause in this policy, cannot be liable. The clause does not refer to a seizure of *freight;* but it means, that if by reason of a seizure in port, either of the vessel or cargo, the freight should be lost, the insurers are not to be liable. So that, in either point of view, the plaintiffs cannot be entitled to recover. In the case of *Levie* v. *Janson,*† the vessel was warranted free from *American* condemnation, and was stranded, by the perils of the sea, in going out of the port of *New-York,* and, while ashore, was seized by the officers of the government of the *United States,* for a breach of the embargo; and the court of king's bench held, that the *total* loss having ultimately arisen from a peril, *excepted out of the policy,* the insured was not entitled to recover.

*D. B. Ogden,* in reply. The master swears he intended to go to *Bremen,* and that he went into the *Texel* only from necessity. Indeed, the facts in the case clearly show that *Amsterdam* was a port of necessity. Because some of the goods were consigned to Messrs. *Willincks,* it does not follow that they were to be delivered at *Amsterdam;* for the bill of lading expresses that they were to be delivered at *Bremen.* Besides, the bark only

* 2 Johns.
Rep. 323.

† 12 East,
647. Peake's
N. P. Cases,
212.

was delivered, and the other articles consigned to the *Willincks*, were directed to be carried to *Bremen*.

To entitle the party to a *pro rata* freight, there must be some benefit conferred on the owner of the goods; there must be a ground for a *quantum meruit*. The moment the goods reached *Amsterdam*, they were seized in the lighters, and never came into the possession of the insured or his assigns.

KENT, Ch. J. delivered the opinion of the court. To have entitled the plaintiffs to freight, there must have been a delivery of the cargo at *Bremen*, or a voluntary acceptance of it, at the *Texel* or *Amsterdam*, by the consignees, or by *Field*, the super-cargo, or a refusal by him, upon an offer made, to have the goods sent on in another vessel. Neither of these events happened, except as to a small part of the cargo consigned to the *Willincks*. There is no sufficient evidence in the case of any other delivery or acceptance, nor of any offer by the captain to provide means to forward the goods. The case shows, that the goods were of necessity discharged from the ship into lighters, and that while in that situation they were seized. The freight was, therefore, lost to the plaintiffs. The next inquiry is, by what means it was lost, and whether if the seizure had not happened, the goods might not have been sent to *Bremen* by another vessel. If this might have been done, the omission to do it arose either from the voluntary neglect of the captain, or from the seizure. The underwriters, by the warranty in the policy, were to be exempt from loss by "seizure in port;" and the point is, whether it be a good defence, in any case, to an action on a policy on freight, that the ship-owner refused, or neglected, to forward the goods by another vessel, when he had it in his power. We have not met with any decided case on this point; but it appears to be reasonable, and consistent with the principles of the contract, that the insurers should, in such case, be discharged. The contract is, for the insurance of the freight of the cargo on board the ship *Dean*, from *New-York* to *Bremen*. It is not of the essence of the contract, that the cargo should, in every event, be conveyed in the ship mentioned, because the party is allowed to change the ship from necessity. The delivery of the cargo is the cause of earning freight. The ship, on board of which the goods are laden, is the vehicle of conveyance agreed on, but it is only one of the means, and not, in all cases, the indispensable means, to attain the object. It is well understood and settled, that when the vessel is disabled

in the course of the voyage, and the cargo remains, the captain is authorized to forward it by another vessel, and thereby to earn the freight. If the shipper, or his agent, will not consent to this, the captain will then be entitled to his full freight, and if he cannot, or will not, forward the goods, the freighter is then entitled to receive them, without paying any thing. (*Griswolds* v. *New-York Ins. Company*, 3 *Johns. Rep.* 321. 10 *East*, 393.)

If other means to forward the cargo can be procured, it depends entirely upon the captain's volition whether he earns freight or not; and if it be lost by that volition, it ought not to be at the expense of the insurer, who only undertakes to answer for the loss of freight arising from *vis major*, and not from the act, unless it be the barratrous act, of the party. If the disabled ship be easily repairable, the shipowner is bound to do it, and he cannot, in that case, resort to the insurer for his freight. This was so decided in the case of the *Griswolds* v. *The New-York Ins. Company*. If it be equally in his power to procure another vessel, and he does not, there is the same reason that he should be precluded from placing the consequences of that neglect upon the insurer.

In the present case, it does not appear that the captain took any step, or made any effort, to forward the goods by another conveyance. If he was prevented by other means than the seizure, it ought to have been shown; otherwise, the omission is justly imputable to that cause. That is the only apparent and proximate, and it was an efficient, cause.

The court are, therefore, of opinion, that the defendants are not answerable for the loss of the freight, and that they are entitled to judgment.

Judgment for the defendants.