THE GENERAL MUTUAL INSURANCE COMPANY, PLAINTIFFS IN ERROR, *v.* EBENEZER B. SHERWOOD.

Under a policy insuring against the usual perils of the sea, including barratry, the underwriters are not liable to repay to the insured, damages paid by him to the

owners of another vessel and cargo, suffered in a collision occasioned by the negligence of the master or mariners of the vessel insured.

A policy cannot be so construed as to insure against all losses directly referable to the negligence of the master and mariners. But if the loss is caused by a peril of the sea, the underwriter is responsible, although the master did not use due care to avoid the peril.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of New York.

It was an action of assumpsit brought by Sherwood against the General Mutual. Insurance Company, upon a policy of insurance, dated New York, 17th of· October, 1843, by which the company insured Sherwood to the amount of $8,000, for the account of whom it might concern, loss payable to him, upon the brig Emily, from the 17th October, 1843, at noon, until the 17th October, 1844,·at noon, the vessel being valued in the policy at $16,000.

This policy was effected for the benefit, and to protect tne interest of Frederick Sherwood and Abraham Sherwood, part owners of said vessel.

On the 13th March, 1844, the brig sailed from Charleston with a cargo of·merchandise, bound for New York, being at the time provided with a skilful and experienced master, experienced and skilful mates, and a competent crew, and was in all respects seaworthy for the voyage.

About 5 o'clock in the afternoon of Tuesday, 19th March, a licensed pilot boarded them, and took the command and management of the vessel. The wind being unfavorable, the brig ran, closehauled, heading north and north by east, until the pilot considered himself up to the point of the Romer Shoals; he then tacked and stood in for Sandy Hook, heading to the southward and westward, closehauled. Between 7 and 8 o'clock at night, the pilot gave orders to go about; in attempting to execute this order, the brig misstayed, and the pilot then gave orders to wear ship. At this time, and whilst in the act of wearing, being very close to the shore, the rigging of the vessel having become entangled, and the crew being occupied with the manœuvring of their vessel, the first mate, who was on the top-gallant forecastle, saw a schooner very close to them. Confused by this sudden appearance, his attention in keeping a sharp lookout having been distracted by his attending to the working of the vessel, he, in this sudden emergency, exclaimed, " Helm hard down! luff! luff!" The man at the wheel obeyed, and almost instantaneously the brig struck the schooner, which proved to be " The Virginian," bound from Norfolk, with a full cargo of merchandise, for New York. The order given by the mate to " luff," was erroneous.

The brig Emily was injured by the collision to the amount of $300; the schooner Virginian was so much injured that she sunk, and with her cargo was totally lost.

On the 26th March, 1844, the owners of the schooner filed their libel in the District Court of the United States for the Southern District of New York, against the brig Emily, claiming that she was specifically liable for the loss and injury occasioned by the libel.

The owners of the Emily filed their answer, denying that the collision was occasioned by the fault of those in charge of her, and imputing the blame to the crew of the Virginian. On the 12th October, 1845, the cause was brought to a hearing, and witnesses examined on both sides.

On the 22d April, 1845, Judge Betts pronounced his opinion to be, that the brig Emily was to leeward of the Virginian when the latter was first seen; that no sufficient and proper look-out was kept on board her at the time; that the intermission, for the moment, of their precautionary vigilance on board the Emily, might very naturally spring out of a confusion likely to arise from the failure of the vessel to come round to the wind, her dangerous proximity to the shore, the entanglement of some of the running rigging which impeded her manœuvre, and the distraction these circumstances were calculated to produce in the attention of the mate, who, at the moment, appeared to have been the only one acting as look-out forward; but that these circumstances did not relieve the vessel from maintaining these precautions, and from the consequences of the omission to do so; and the Judge accordingly held, that the collision occurred by the negligence or fault of the brig. He decreed in favor of the libellants for the value of the schooner Virginian, and of so much of the cargo as belonged to her owners. It was referred to the clerk to ascertain and report the amount of the loss and damage. The cause came on to be heard on the 3d of June, 1845, upon the clerk's report and exceptions thereto. The court ordered and decreed, that the libellants recover their damages by means of the premises, viz. $5,250$\frac{90}{100}$, with their costs, and that the brig Emily be condemned for satisfaction thereof; the libellants' costs were taxed at $704$\frac{90}{100}$. On the 3d July, 1845, the owners of the Emily appealed to the Circuit Court of the United States for the Southern District of New York, and in November, 1846, the appeal was argued before Mr. Justice Nelson.

On the 6th April, 1847, Judge Nelson delivered his opinion, and found, upon the proofs, in substance, that the Virginian was not in fault; that the mistaken order of the mate of the brig to the man at the wheel, in connection with the derangement of

the running rigging of the vessel, and the confusion on board from her misstaying a few minutes before, had produced the collision. The Circuit Court affirmed the decree of the District Court, with costs. This decree was settled by compromise, and upon payment by the owners of a sum less than the decree, it was satisfied. Early notice of the pendency of the action in the District Court, and also of the appeal to the Circuit Court, was given to the Mutual Safety Insurance Company, with a request that they would unite in the defence, or take such measures as they might deem proper.

Owners of other parts of the cargo lost by the collision, filed their libels against the Virginian, which, after the decrees above mentioned, were settled by compromise; other claims were also made, and settled by compromise; in every instance, the sum paid being less than the claim. On the 23d August, 1847, the owners of the brig Emily, having previously presented to their various underwriters preliminary proofs of the loss, copies of the proceedings in the District and Circuit Courts, and of the payment and settlement of the demands aforesaid, commenced suits upon the policies of insurance, in the Circuit Court of the United States. The declaration filed in the present action contains two special counts, and the common money counts.

The special counts, set forth all the facts and circumstances with great particularity.

The defendants filed demurrers to each of the special counts, assigning as cause, that neither of the said counts showed any loss or damage by any peril covered by the policy of insurance. The plaintiff below joined in demurrer.

The cause was argued in April, 1848, before his Honor, Mr. Justice Nelson, and the Hon. Samuel R. Betts. Judgment was given upon the demurrer in favor of the plaintiff below. The defendants did not interpose any other answer to the two special counts, but to the common counts (III. IV. V. and VI.) they pleaded the general issue.

The court having decided the demurrers, ordered the damages to be assessed under the special counts. In May, 1849, the jury assessed the plaintiff's damages at $4,526$\frac{34}{100}$. Judgment was signed 5th June, 1849.

Upon the assessment of the damages, the defendant's counsel prayed the court to instruct the jury —

1. That the general objection to the recovery of the plaintiff, was, that [it] is apparent, on the face of the declaration, that the loss claimed was not occasioned by a peril insured against, but was to be attributed solely to the gross negligence of the agents of the assured; and therefore, that the loss was either an exception from the terms of the policy, or was not covered by them at all.

2. That the rule "*causa proxima non remota spectatur*," in its proper application, relieves the defendants from all liability; since the proximate cause here was, according to the decree of the District and Circuit Court, "the fault of the Emily." The collision by itself did not create the liability to pay. The want of care, skill, and vigilance on the part of the master and crew of the Emily were to be superadded to the collision.

3. That if the negligence and fault of the assured, and not the collision, were the proximate cause of the loss, such fault and negligence in this case, (without which the decree would not have been made,) should certainly excuse the underwriters.

4. That even if the insurer is liable for the amount of the claim against the Emily for the loss of the schooner, it does not follow that he is also liable for the loss of the cargo on board the schooner Virginian. No case has yet carried the liability of the underwriter to this extent.

5. That the cost of defending the suits are not chargeable upon the underwriters.

6. That the counsel fees to the advocate are clearly inadmissible.

Whereupon his honor, the Judge, charged the jury:— It appeared, from the evidence, that the brig Emily sailed from Charleston, for New York, on the thirteenth day of March, in the year 1841, with a cargo of cotton and other merchandise; that on the afternoon of the 18th day of March, aforesaid, being near Barnegat, she took aboard a licensed pilot, and proceeded towards New York, the wind being boisterous, and blowing in flaws; that between 7 and 8 o'clock in the evening she stood over for the Romer Shoals, closehauled on a wind, heading for Sandy Hook. Finding that the brig could not fetch in to the Hook upon that tack, and having run as close to the beach as he deemed prudent, the pilot gave orders to tack ship; in consequence of the maintopsail-brace being slacked the vessel did not go about, and orders were then given by the pilot to wear ship, and whilst in the act of wearing, the mate of the Emily discovered a sail close by, which proved to be the schooner Virginian, bound for New York, with a cargo on board; the mate cried out, sail ahead! but almost immediately thereafter the brig struck the schooner and sunk her, with her cargo. The owners of the schooner Virginian filed their libel in the District Court of the United States for the Southern District of New York, before referred to, against the brig Emily; alleging that the collision was occasioned by the fault and mismanagement of those having charge of the Emily. An answer was filed by the owners of the latter, denying that the collision was properly attributable to the Emily; and, on the contrary, alleging that it

was occasioned by the fault and unskilfulness of those on board of the schooner; proofs were taken in the District Court, and the cause having been heard upon the pleadings and proofs, an interlocutory decree was pronounced therein on the twenty-second day of April, in the year 1845, whereby, after reciting that it appeared to the court that the said collision, and the damages and loss incurred by the libellant in consequence thereof, occurred by the negligence or fault of the said brig Emily, it was considered that the libellants were entitled to recover the damages by them sustained thereby; and by which decree a reference was ordered, to ascertain the value of the said schooner Virginian, her tackle, &c., at the time of the collision, and of the cargo then on board of her, belonging to the libellants, and the amount of the loss in the premises sustained by the libellants by means of such collision; and afterwards, the said cause having again been heard upon exceptions to the report, and the proofs and allegations of the respective parties, a final decree was pronounced thereon on the seventh day of June, in the year 1845, whereby it was ordered, adjudged, and decreed, by the said District Court, that the libellants recover in the said action their damages, by means of the premises, the sum of five thousand two hundred and fifty-four dollars and seventy cents, together with their costs to be taxed; and that the said brig, her tackle and apparel, be condemned for satisfaction thereof, which said costs of the libellants were afterwards duly taxed at $704.96.   From this decree an appeal was taken, by the owners of the brig Emily, to the Circuit Court of the United States for the Southern District of New York, in the second circuit, and after hearing the proofs and the arguments of counsel, the court affirmed the decree of the District Court, with the costs of the respondents to be taxed.   After the decision of this court had been pronounced, another libel was filed by the owners of a portion of the cargo lost on board the Virginian, against the brig Emily, and claims were made, and libels threatened by others of the shippers of the cargo lost on board of the schooner, against the owners of the Emily, which action and claims by the owners of the said cargo were compromised and settled by the owners of the Emily.   That if they should find, upon the evidence, that, at the time of sailing from Charleston, the brig Emily was a seaworthy vessel, properly equipped for the voyage to New York, and that she had on board a skilful master, and a sufficient and competent crew, the defendants are liable upon the policy given in evidence for the one half of the loss to the brig Emily, arising from the collision with the schooner Virginian, not exceeding the sum insured, notwithstanding that it was occasioned by, or resulted from, the fault of the pilot, or of

the master and crew of the brig, either from want of keeping a sufficient look-out or from mismanagement of the vessel.

The direct and immediate consequence of the collision was that a lien was created on the brig, in favor of the owners of the Virginian, and of the owners of the cargo on board of her, to the extent of the value of the schooner, and of the cargo that was destroyed by the disaster, and the plaintiff is entitled to recover from the underwriters, not only the cost of the actual repairs of the injury done to the brig, but also the several sums that her owners have actually and in good faith paid to the owners of the schooner, and of the cargo lost with her, in order to discharge their vessel from the liens created by the said collision; that the plaintiff is also entitled to recover from the underwriters on the brig the actual expenses and costs, including reasonable advocate's fees, necessarily incurred in the defence of the brig from the aforesaid claim.

The policy of insurance, in this case, is subscribed for $8,000, the vessel being valued therein at $16,000; it was therefore an insurance upon one half of the vessel, and the defendants are consequently liable for one half only of the loss and damage sustained by the assured in consequence of the said collision which the jury shall find, upon the evidence, was actually and properly paid by the owners of the Emily, in order to relieve their vessel.

The counsel for the defendant then and there excepted to said charge, so far as the same differed from, or did not conform to, the instructions prayed for by him, as above.

The jury thereupon rendered a verdict for the plaintiff, for four thousand five hundred and thirty-six dollars and thirty-four cents damages, and six cents costs.

And because the said several matters so offered and given in evidence, and insisted upon by the defendants aforesaid, and the charge of the said Judge, and the said exceptions taken to the same, do not appear by the record of the verdict aforesaid, the said defendants have caused the same to be written on this bill of exceptions, to be annexed to such record, and have prayed the said Judge to set his hand and seal to the same. Whereupon the Hon. Samuel Nelson, the associate Justice before whom the said issues were tried, and said exceptions taken, and one of the judges of said Circuit Court, hath hereto set his hand and seal, this twenty-eighth day of November, in the year of our Lord one thousand eight hundred and fifty-one.

Upon this bill of exceptions, and the judgment of the court upon the demurrers, the case came up to this court.

It was argued by *Mr. A. Hamilton, Jr.,* for the plaintiffs in

error, and *Mr. Butler*, with whom was *Mr. Cutting*, for the defendant in error.

The points made on the part of the plaintiff in error, were the following.

I. The general objection to the recovery of the plaintiff is, that it is apparent, on the face of the declaration, that the loss that is claimed was not occasioned by a peril insured against; but is to be attributed solely to the gross negligence of the agents of the assured. Hence the loss is either an exception from the terms of the policy, or is not covered by them at all. Emerigon, vol. 1, p. 429, (Ed. 1827, 329, 336); Tanner *v.* Bennett, 1 Ry & Moody, 182; Surdet *v.* Hall, 4 Bing. 607; 2 Arnold, 775, 770, 777, cases cited.

II. The rule " *causa proxima non remota spectatur*," in its proper application, relieves the defendant from all liability, since the proximate cause here was, according to the decree of the District and Circuit Courts, "the fault of the Emily." The collision, by itself, did not create the liability to pay. The want of skill, care, and vigilance on the part of the master and crew of the Emily was to be superadded to the collision. Paddock *v.* Franklin Insurance Company, 11 Pick. 227; American Insurance Company *v.* Ogden, 20 Wend. 287; Starbuck *v.* New England Marine Insurance Company, 19 Pick. 198; Robinson *v.* Jones, 8 Mass. 536.

III. If, then, the negligence and fault of the assured, and not the collision, were the proximate cause of the loss, such fault and negligence, in this case, (without which the decree would not have been made,) should certainly excuse the underwriters. Hazard *v.* New England Insurance Company, 1 Sumn. 218; 3 Kent, 5th ed. p. 176, note a. 371, 373; Copeland *v.* New England Insurance Company, 2 Metcalf, 432; Cleveland *v.* Union Insurance Company, 8 Mass. 308; Bradhurst *v.* Col. Insurance Company, 9 Johns. 17–21; Potter *v.* Suffolk Insurance Company, 2 Sumn. 197; Galbraith *v.* Gracie, 1 Wash. C. C. R. 219.

IV. But even if the insurer is liable for the amount of the decree against the Emily, for the loss of the schooner, it does not follow that he is also liable for the loss of the cargo on board the schooner. No case has yet carried the liability of the underwriter to this extent.

The points made by the counsel for the defendant in error were the following.

I. The underwriters are responsible for losses by any of the perils insured against, although such losses may have been occasioned by, or have resulted from, the negligence or fault of the master or crew. If the assured has provided a seaworthy

General Mutual Insurance Company v. Sherwood.

vessel, with a skilful master and a sufficient and competent crew, the underwriter takes the risks of navigation, and of the perils insured against, although caused by the negligence, carelessness or unskilfulness of the master and crew. Peters v. Warren Ins. Co. 14 Peters, 99; Peters v. Warren Ins. Co. 3 Sumn. 389; Waters v. Merchants Ins. Co. 11 Peters, 213; Columbia Ins. Co. v. Lawrence, 10 Peters, 507; Patapsco Ins. Co. v. Coulter, 3 Peters's R. 222; Hale v. Wash. Ins. Co. 2 Story R. 176; Smith's Mercant. Law, (Amer. Edit.) 347; Sadler v. Dixon, 8 Mees. & Welsby, 895; Dixon v. Sadler, 5 M. & Welsby, 405; Bush v. The Royal Ex. Ins. Co. 2 B. & Ald. 73; Walker v. Maitland, 5 B. & Ald. 174; Bishop v. Pentland, 7 B. & C. 219; Shore v. Bentall, 7 B. & C. 798, n.; Henderson v. Western Mar. & F. Ins. Co. 10 Robinson, 164; Copeland v. N. Eng. Mar. Ins. Co. 2 Metcalf, 432; Perrins, Adm'r, v. Protect. Ins. Co. 11 Ohio R. 147; Park, Ins. 482, (Eng. Edit. of 1842, page 156.) Grim v. Phenix Ins. Co. 13 Johns. 451; in this country, and Law v. Hollingsworth, 7 Term R. 156, in England, and other cases decided about the same time, are not correct in principle, are now generally disapproved of, and are substantially overruled. Opinion of Betts, J., in this case, 1 Blatchford's R. 251.

II. A loss by collision is one of the perils insured against, as much so as loss by fire, stranding, capture, &c. If it occurs without fault on the part of the insured vessel, it is conceded that the underwriters are bound to indemnify the assured against loss; and, upon principle and authority, the insurers are equally liable if the collision happens through the fault, mistake, error of judgment, or carelessness of the vessel insured. Peters v. Warren Ins. Co. 14 Peters's R. 99; S. C. 3 Sum. 389; Hale v. Washington Ins. Co. 2 Story, 176; 1 Phill. Ins. 636.

III. The direct and immediate consequence of the collision was that, *eo instanti*, a charge, encumbrance or lien was created on the ship to the extent of the injury done to the Virginian and cargo. This charge caused the necessity of an expenditure by the assured, without which he could not extricate nor repossess himself of his vessel. This loss is as direct a consequence of the collision as if the Emily had been injured so as to have required repairs by carpenters to the same amount.

IV. The underwriters are liable not only for the amount of the lien or charge that was created in favor of the owners of the Virginian, but also for the lien or charge created by the destruction of the cargo, and for which the Emily was specifically liable *in rem*.

V. The defendants are responsible for all the costs, charges,

and expenses, fairly and reasonably incurred by the plaintiff below, in defending the vessel from the claims made against her;. this is necessary to afford him a full indemnity; and the clause in the policy, rendering it proper and necessary to sue for labor and travel in and about the defence, safeguard and recovery of the vessel, contemplates and provides for it. See 2 Phillips on Ins. 509, 749, 464; 1 Id. 693. Hastie *v.* De Peyster, 3 Caines's Rep. 190 — a case of reinsurance; suit against the first insurer defended, and a recovery with costs — principal opinion by Kent, C. J.: "Such charges are allowed, as composing part of a claim for indemnity." Per Livingston, J.: Plaintiffs gave notice to defendants, who took no steps to prevent the progress of the suit to judgment; all the costs of that suit, both plaintiffs' and defendants', are a proper charge in this: "not pretended that its defence was unnecessary or improper." 1 Story's Rep. 458; Hale *v.* Wash. Ins. Co. 2 Story, 176; Peters *v.* Warren Ins. Co. 14 Peters's Rep. 99, (p. 100, near the foot.) "Expenses of defending the suit" for a collision, included in the adjustment. Watson *v.* Marine Ins. Co. 7 Johns. Rep. 57 — a case of capture and recovery for a total loss, and also expenses of the captain in endeavoring to obtain the release and restoration of the ship; travelling, board, wages, and 1,105 livres left in the hands of the consignees, to prosecute an appeal to the Council of State; items were subject to opinion of court; another charge was deducted; the above allowed. Jumel *v.* Marine Ins. Co. 7 Johns. Rep. 412, 426 — case of capture, condemnation, appeal, compromise, sale; purchase by master; held master not bound by appeal; only to act in good faith and sound discretion, &c. Gardere *v.* Columbia Ins. Co. 7 J. R. 514, (same principles.) Francis *v.* Ocean Ins. Co. 6 Cowen, 404, affirmed, 2 Wend. 64 — seizure as for illicit trade — irregular condemnation and sale, no defence by master, &c. Expense incurred in prosecuting a claim for the proceeds of the ship. Held, "entitled to recover all the expense fairly incurred in obtaining a restoration of the proceeds of the vessel." Bridge *v.* Niagara Ins. Co. 1 Hall's Sup. Ct. R. 423 — salvage expenses, including costs of legal proceedings to ascertain validity and amount of salvage claims, storage of cargo, bottomry expenses, protests, surveys, wages and provisions, whilst seeking a port of refitting, and many other instances of charges and expenses, resulting from and incident to losses by perils insured against. 9 Wend. 416, Ricket *v.* Snyder — In an action for breach of covenant of seisin, the plaintiff is entitled to recover counsel fees as well as taxable costs incurred in defending the premises. The covenant of seisin is one of indemnity. 2 Phill. Ins. 464, 509, 749. 1 Id. 693. — The defence in the District Court, and

on appeal in the Circuit Court, of the libel, by the owners of the Virginian, (owners also of some of the cargo,) and the decisions thereon, justified the plaintiff in compromising the other claims without litigation. By such compromises he greatly diminished the sum for which the defendants were liable. He was entitled to recover if he had paid the amounts without litigation. Hale *v*. Washington Ins. Co. 2 Story, 176.

Mr. Justice CURTIS delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the Southern District of New York.

The action was assumpsit on a time policy of insurance, subscribed by the plaintiffs in error, upon the brig Emily, during one year from the seventeenth day of October, 1843, for the sum of eight thousand dollars, the vessel being valued at the sum of sixteen thousand dollars. The policy, described in the declaration, assumed to insure against the usual sea perils, among which is barratry of the master and mariners. The declaration avers, that during the prosecution of a voyage, within the policy, while on the high seas, and near the entrance of the harbor of the city of New York, by and through the want of a proper look-out, by the mate of the said brig, and, by and through the erroneous order of the chief mate, who was stationed on the top-gallant forecastle of the said brig, who saw the schooner, hereinafter named, and cried out to the man at the wheel, "helm hard down—luff"—whereas, he ought not to have given the said order; and, by and through the negligence and fault of the said brig Emily, the said brig ran into a schooner called the Virginian, and so injured her that she sank, whereby the said brig Emily became liable to the owners of the said schooner and her cargo, to make good their damages; which liability was a charge and encumbrance on the said brig. The declaration then proceeds to aver, that the brig was libelled, by the owners of the schooner and her cargo, in the District Court of the United States; that a decree was there made, whereby it was adjudged, "That the collision in the pleadings mentioned, and the damages and loss incurred by the libellants, in consequence thereof, occurred by the negligence or fault of the said brig, and that the libellants were entitled to recover their damages by them sustained thereby;" that the same having been assessed, a decree therefor was made by the District Court, which, on appeal, was affirmed by the Circuit Court, which found, "That the hands, on board the Emily, failed to keep a proper look-out, and, that the said brig might have avoided the collision, by the use of proper caution, skill, and vigilance." The declaration further avers, that the plaintiff has paid divers sums

of money, to satisfy this decree and the expenses of making the defence, amounting to the sum of eight thousand dollars.

This statement of the substance of the declaration, presents the question which has been here argued, and sufficiently shows how it arose; for, although there was a demurrer to the first two counts in the declaration, and a trial upon the general issue pleaded to the other counts, and a bill of exceptions taken to the ruling at the trial, yet the same question is presented by each mode of trial, and that question is, whether, under a policy insuring against the usual perils, including barratry, the underwriters are liable to repay to the insured, damages paid by him to the owners of another vessel and cargo, suffered in a collision occasioned by the negligence of the master or mariners of the vessel insured.

The great and increasing internal navigation of the United States, carried on over long distances, through the channels of rivers and other comparatively narrow waters, where the danger of collisions, and the frequency of their occurrence, are much greater than on maritime voyages, renders the respective rights of underwriters and insured, growing out of such occurrences, of more moment in this than in any other civilized country; and the court has considered the inquiry presented by this case, with the care which its difficulty and its importance demand.

In examining, for the first time, any question under a policy of insurance, it is necessary to ascertain whether the contract has received a practical construction, by merchants and underwriters; not through any partial or local usages, but by the general consent of the mercantile world. Such a practical construction, when clearly apparent, is of great weight, not only because the parties to the policy may be presumed to have contracted in reference to it, but because such a practice is very high evidence of the general convenience and substantial equity of it, as a rule. This is true of most commercial contracts; but it is especially true of a policy of insurance, which has been often declared to be an "obscure, incoherent, and very strange instrument," and, "generally more informal than any other brought into a court of justice:" (Per Buller, J., 4 T. R. 210; Mansfield, C. J., 4 Taunt. 380; Marshal, C. J., 6 Cr. 45; Lord Mansfield, 1 Bur. 347); but which, notwithstanding the number and variety of the interests which it embraces, and of the events by which it is affected, has been reduced to much certainty, by the long practice of acute and well-informed men in commercial countries; by the decisions of courts in America and in England, and by able writers on the subject, in this and other countries.

And it should not be forgotten, that, not only in the introduc-

tion of this branch of law into England, by Lord Mansfield, but i. its progress since, both there and here, a constant reference has been had to the usage of merchants, and the science of insurance law has been made and kept a practical and convenient system, by avoiding subtle and refined reasoning, however logical it may seem to be, and looking for safe practical rules.

Now, although cases like the present must have very frequently occurred, we are not aware of any evidence, that underwriters have paid such claims, or that, down to the time when one somewhat resembling it was rejected by the Court of King's Bench, in De Vaux v. Salvador, (5 Ad. and Ellis,) decided in 1836, such a claim was ever made. And we believe that, if skilful merchants, or underwriters, or lawyers, accustomed to the practice of the commercial law, had been asked whether the insurers on one vessel were liable for damage done to another vessel, not insured by the policy, by a collision occasioned by the negligence of those on board the vessel insured, they would, down to a very recent period, have answered, unhesitatingly, in the negative.

As we shall presently show, such, for a long time, was the opinion of the writers on insurance, on the continent of Europe, and in England and America. And this, alone, would be strong proof of the general understanding and practice of those connected with this subject.

But, although this practical interpretation of the contract is entitled to much weight, we do not consider it perfectly decisive. It may be, that, by applying to the case the settled principles of the law of insurance, the loss is within the policy ; and, that it has not heretofore been found to be so, because an exact attention has not been given to the precise question. Or, it may be, that the weight of recent authority, and the propriety of rendering the commercial law as uniform as its necessities, should constrain us to adopt the rule contended for by the defendant in error. And, therefore, we proceed to examine the principles and authorities, bearing on this question.

Upon principle, the true inquiries are, what was the loss, and what was its cause ?

The loss was the existence of a lien on the vessel insured, securing a valid claim for damages, and the consequent diminution of the value of that vessel. In other words, by operation of law, the owners of the Virginian obtained a lien on the vessel insured, as security for the payment of damages, due to them for a marine tort, whereby their property was injured.

What was the cause of this loss ? We think it is correctly stated by this court, in the case of the Paragon, 14 Peters, 109.

In that case, it was said : " In the common case of an action for damages for a tort done by the defendant, no one is accustomed to call the verdict of the jury and the judgment of the court thereon, the cause of the loss to the defendant. It is properly attributable to the original tort, which gave the right to damages consequent thereon." The cases there spoken of, were claims *in personam*. But the language was used to illustrate the inquiry, what should be deemed the cause of a loss by a claim *in rem*, and is strictly applicable to such a claim. Whether the owners of the Virginian would proceed *in rem* or *in personam*, was at their election. It affected only their remedy. Their right, and the grounds on which it rested, and the extent of the defendant's liability, and its causes, were the same in both modes of proceeding. And, in both, the cause of the loss of the defendant would be the negligence of his servants, amounting to a tort. The loss consisting in a valid claim on the vessel insured, we must look for the cause of the loss in the cause of the claim, and this is expressly averred by the declaration to have been the negligence of the servants of the assured. From the nature of the case, it was absolutely necessary to make such an averment. If the declaration had stated simply a collision, and that the plaintiff had paid the damages suffered by the Virginian and her cargo, it would clearly have been bad on demurrer; because, although it would show a loss, it would state no cause of that loss. It is only by adding the fact, that the damage done to the Virginian was caused by negligence, that is, by stating the cause of damage, that the cause of payment appears, and, when it appears, it is seen to be the negligence of the servants of the assured.

We know of no principle of insurance law which prevents us from looking for this sole operative cause, or requires us to stop short of it, in applying the maxim *causa proxima non remota spectatur*. The argument is, that collision, being a peril of the sea, the negligence which caused that peril to occur is not to be inquired into; it lies behind the peril, and is too remote. This is true when the loss was inflicted by collision, or was by law a necessary consequence of it. The underwriter cannot set up the negligence of the servants of the assured as a defence. But in this case he does not seek to go behind the cause of loss, and defend himself by showing this cause was produced by negligence. The insured himself goes behind the collision, and shows, as the sole reason why he has paid the money, that the negligence of his servants compelled him to pay it. It is true that an expense, attached by the law maritime to the subject insured, solely as a consequence of a peril, may be considered as proximately caused by that peril. But where the expense is attached

to the vessel insured, not solely in consequence of a peril, but in consequence of the misconduct of the servants of the assured, the peril *per se* is not the efficient cause of the loss, and cannot, in any just sense, be considered its proximate cause. In such a case the real cause is the negligence, and unless the policy can be so interpreted as to insure against all losses directly referable to the negligence of the master and mariners, such a loss is not covered by the policy. We are of opinion the policy cannot be so construed. When a peril of the sea is the proximate cause of a loss, the negligence which caused that peril is not inquired into; not because the underwriter has taken upon himself all risks arising from negligence, but because he has assumed to indemnify the insured against losses from particular perils, and the assured has not warranted that his servants will use due care to avoid them.

These views are sustained by many authorities. Mr. Arnould, in his valuable Treatise on Insurance, (vol. 2, 775,) lays down the correct rule : " Where the loss is not proximately caused by the perils of the sea, but is directly referable to the negligence or misconduct of the master or other agents of the assured, not amounting to barratry, there seems little doubt that the underwriters would be thereby discharged." To this rule must be referred that class of cases, in which the misconduct of the master or mariners has either aggravated the consequences of a peril insured against, or been of itself the efficient cause of the whole loss. Thus, if damage be done by a peril insured against, and the master neglects to repair that damage, and in consequence of the want of such repairs, the vessel is lost, the neglect to make repairs, and not the sea damage, has been treated as the proximate cause of the loss. In the case of Copeland v. The N. E. Marine Ins. Co. (2 Met. 432,) Mr. Chief Justice Shaw reviews many of the cases, and states that "the actual cause of the loss is the want of repair, for which the assured are responsible, and not the sea damage which caused the want of repair, for which it is admitted the underwriters are responsible." And the same principles were applied by Mr. Justice Story, in the case of Hazard v. N. E. Marine Ins. Co. (1 Sum. R. 218,) where the loss was by worms, which got access to the vessel in consequence of her bottom being injured by stranding, which injury the master neglected to repair. So where a vessel has been lost or disabled, and the cargo saved, a loss caused by the neglect of the master to transship, or repair his vessel and carry the cargo, cannot be recovered. Schieffelin v. N. Y. Ins. Co. 9 Johns. 21; Bradhurst v. Col. Ins. Co. 9 Johns. 17; Am. Ins. Co. v. Centre, 4 Wend. 45; S. C. 7 Cow. 504; McGaw v. Ocean Ins. Co. 23 Pick. 405. So where condemnation of a neutral

31*

vessel was caused by resistance of search; Robinson *v.* Jones, 8 Mass. 536; or a loss arose from the master's negligently leaving the ship's register on shore; Cleveland *v.* Union Ins. Co. 8 Mass. 308. So where a vessel was burnt by the public authorities of a place into which the master sailed with a false bill of health, having the plague on board; Emerigon, (by Meredith,) 348; in these and many other similar cases, the courts, having found the efficient cause of the loss to be some neglect of duty by the master, have held the underwriter discharged. Yet it is obvious that in all such cases, one of the perils insured against, fell on the vessel. And they are to be reconciled with the other rule, that a loss caused by a peril of the sea is to be borne by the underwriter, though the master did not use due care to avoid the peril, by bearing in mind that in these cases it is negligence, and not simply a peril of the sea, which is the operative cause of the loss. It may sometimes be difficult to trace this distinction, and mistakes have doubtless been made in applying it, but it is one of no small importance in the law of insurance, and cannot be disregarded without producing confusion. The two rules are in themselves consistent. Indeed, they are both but applications, to different cases, of the maxim, *causa proxima non remota spectatur*. In applying this maxim, in looking for the proximate cause of the loss, if it is found to be a peril of the sea, we inquire no further; we do not look for the cause of that peril. But if the peril of the sea, which operated in a given case, was not of itself sufficient to occasion, and did not in and by itself occasion the loss claimed, if it depended upon the cause of that peril whether the loss claimed would follow it, and therefore a particular cause of the peril is essential to be shown by the assured, then we must look beyond the peril to its cause, to ascertain the efficient cause of the loss.

The case at bar presents an illustration of both rules. So far as the brig Emily was herself injured by the collision, the cause of the loss was the collision, which was a peril insured against, and the assured, showing that his vessel suffered damage from that cause, makes a case, and is entitled to recover. But he claims to recover not only for the damages done to his vessel, which was insured, but for damages done to the other vessel, not insured. To entitle himself to recover these, he must show not only that they were suffered by a peril of the sea, but that the underwriter is responsible for the consequences of that peril falling on a vessel not insured. It is this responsibility which is the sole basis of his claim, and to make out this responsibility he does not and cannot rest upon the occurrence of a collision; this affords no ground for this claim; he must show a particular cause for that collision; and aver that by reason of

the existence of that cause, the loss was suffered by him, and so the underwriter became responsible for it.

This negligence is therefore the fact without which the loss would not have been suffered by the plaintiff, and by its operation the loss is suffered by him. In the strictest sense, it causes the loss to the plaintiff. The loss of the owners of the Virginia was occasioned by a peril of the sea, by which their vessel was injured. But nothing connects the plaintiff with that loss, or makes it his, except the negligence of his servants. Of his loss this negligence is the only efficient cause, and in the sense of the law it is the proximate cause.

The ablest writers of the continent of Europe, on the subject of insurance law, have distinctly declared, that, in case of damage to another vessel solely through the fault of the master or mariners of the assured vessel, the damage must be repaired by him who occasioned it, and the insurer is not liable for it. Pothier Traité d'Assurance, No. 49, 50; Boucher, 1500, 1501, 1502; 4 Boulay Paty, Droit Maritime, (Ed. of 1823,) 14, 16; Santayra's Com. 7, 223; Emerigon, (by Meredith,) 337. If the law of England is to be considered settled by the case of De Vaux v. Salvador, (4 Ad. & El. 420,) it is clear such a loss could not be recovered there. Mr. Marshall is evidently of opinion that unless the misconduct of the master and crew amounted to barratry, the loss could not be recovered. Marsh. on Ins. 495. And Mr. Phillips so states in terms. 1 Phil. on Ins. 636.

It has been urged that, in the case of the Paragon, (Peters v. Warren Ins. Co. 14 Pet. 99,) this court adopted a rule which, if applied to the case at bar, would entitle the insured to recover. But we do not so consider it. It was there determined that a collision without fault was the proximate cause of that loss. Indeed, unless the operation of law, which fixed the lien, could be regarded as the cause of that loss, there was no cause but the collision, and that was a peril insured against.

We are aware that in the case of Hall v. Washington Ins. Co. (2 Story,) Mr. Justice Story took a different view of this question; and we are informed that the Supreme Court of Massachusetts has recently decided a case in conformity with his opinion, which is not yet in print, and which we have not been able to see. But with great respect for that very eminent Judge, and for that learned and able court, we think the rule we adopt is more in conformity with sound principle, as well as with the practical interpretation of the contract by underwriters and merchants; and that it is the safer and more expedient rule.

We cannot doubt that the knowledge by owners, masters, and seamen, that underwriters were responsible for all the damage done by collision with other vessels through their negligence,

would tend to relax their vigilance and materially enhance the perils, both to life and property, arising from this case.

The judgment of the Circuit Court must be reversed, and the cause remanded, with directions to render a judgment for the defendants, on the demurrer to the first two counts, and award a *venire de novo* to try the general issue pleaded to the other counts.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to enter a judgment for the plaintiff in error, on the demurrer to the two first counts, and to award a *venire facias de novo*, to try the general issue pleaded to the other counts.