ISAAC DYER *versus* PISCATAQUA FIRE AND MARINE INS. CO.

In an action on a policy of insurance, the defendants cannot, by way of defence, avail themselves of the condition in the policy, that "no holder of a policy shall be entitled to maintain any action thereon against the company, until he shall have offered to submit his claim to a reference," unless that defence has been set up in their specifications.

To render an insurer liable, the peril insured against must be the sole proximate cause of the loss, so causing it and so connected with it that it could not have been otherwise produced.

And the loss must be so dependent upon the peril, that it is not only the natural result, but is the necessary and inevitable effect of it.

Where a vessel runs upon a reef and is obliged to put into an intermediate port for repairs, and, for want of funds or credit, the master is obliged to sell a portion of the cargo to pay expenses of such repairs, such sale is not the necessary result of the peril at sea.

To render property a subject of general average, it must have been sacrificed to avoid an impending peril, and for the benefit of all concerned.

A part of a cargo sold by the master at an intermediate port, to make *permanent* repairs of damage, caused by a peril passed, and not for the benefit of all parties, is excluded from general average.

ON REPORT from *Nisi Prius*, BARROWS, J., presiding.

ASSUMPSIT on a policy of insurance against the perils of the sea.

One of the conditions in the policy was as follows:—

"No holder of a policy shall be entitled to maintain any action thereon against the company, until he shall have offered to submit his claim to reference. In case any suit shall be commenced without such offer of reference having been made, the claim of the party so commencing such suit shall be released and discharged, and the company be exempted from all liability under it."

The declaration contained no averment of a compliance with this condition; and the specifications of defence did not allege a non-compliance therewith.

After the evidence was all put in, the case was withdrawn from the jury, and submitted to the full Court to be decided according to the legal rights of the parties; and, if

the plaintiff was entitled to recover, the damages were to be assessed by the Court.

The remaining facts sufficiently appear in the opinion.

*E. & F. Fox*, for the plaintiff.

*J. & E. M. Rand*, for the defendants.

DANFORTH, J. — The objection to the maintenance of this suit, before an offer of reference, cannot be sustained. No suggestion of such defence appears in the specifications; it is not, therefore, now open to the defendants.

January 17th, 1862, the defendants insured the plaintiff $4000, on a cargo of molasses on board the "Benjamin Cushing," from Cardenas to Portland, as per policy. The vessel sailed from Cardenas on the 8th of January, 1862, and, on the same day struck upon a reef, in consequence of which, the master was obliged to put into Havana for repairs. Here the vessel was repaired by recaulking, putting in some new planks, and some repairs upon the mainmast. To pay for these repairs, the master was obliged to sell a part of the cargo, as he had no other means of raising the funds. After making the repairs, the master sailed for Portland with the remainder of the cargo on board, but soon after, striking upon "French reef," the cargo became a total loss. On the part of the plaintiff, it is claimed that the insurers are liable for that portion of the cargo sold at Havana to raise money to pay for the repairs there made. This is denied by the defendants. And the whole question depends upon whether this was a loss caused by a peril of the sea. If it was, it was covered by the policy, otherwise it was not. It is very clear that the act of selling was not a peril of the sea, neither was the fact that the vessel needed repairs; for this might have happened from ordinary wear and tear, or from other perils attendant upon a sailing vessel, not insured against. It may however be admitted that striking upon the reef, by which the injury was done, was a peril of the sea. It may also be admitted, that, under the cir-

cumstances, the master was authorized to sell so much of the cargo as was necessary to pay the expenses. Here, then, was a peril of the sea within the contract of insurance followed by a loss. Was the peril the proximate cause of the loss? For it is well settled that the rule "*causa proxima non remota spectatur*," is the one by which the insurer's liability must be ascertained. The difficulty lies, not so much in the principle involved, as in its application. In *Peters* v. *The Warren Ins. Co.*, 14 Peters, 99, (13 Curtis, 370,) it is recognized as the correct rule.

In that case, to bring the loss within the policy, it was deemed necessary that it should be the "natural or necessary consequence of the peril insured against," that the peril was the sole proximate cause of the loss. So, in *United States* v. *Hall*, 6 Cranch, 171, (2 Curtis, 357,) it was said that "an effect, which proceeds inevitably, and of absolute necessity, from a specified cause, must be ascribed to that cause." The inference is that, if otherwise, it would not be so ascribed. It would seem to follow that, to render the insurers liable, the peril insured against must be the sole proximate cause of the loss, so causing it, and so connected with it, that it could not have been otherwise produced. And the loss must be so dependent upon the peril, that it is not only the natural result but is the necessary and inevitable effect of it. No authority has been cited, and we have seen none, which does not fully sustain this view. In the case at bar, the repairs made were such as the owner under his contract as common carrier was bound to make, and although, in this case, the damage was caused by a peril insured against, yet the result would have been the same if caused in any other way, and, under the circumstances, the master would have had the same right to sell the cargo. It would seem to be very clear then that the sale was not the necessary result of the peril at sea, but rather of the want of funds or credit, in port. It grew out of the contract of the plaintiff with the master or owner, and did not attach to his contract with the insurer. The sale was not imme-

diately connected with, or the inevitable result of the peril, but it was necessarily connected with, and the unavoidable result of a want of funds or credit. The peril and consequent damage might have taken place without giving the master authority to sell, while that authority can only come from an absolute want of funds. The defendants did not insure against a want of funds, and therefore are not liable. A similar application of the principle of proximate cause appears to have been made by the Supreme Court in Massachusetts, in *Paddock* v. *Franklin Insurance Co.*, 11 Pick., 235, where it was held that, if an insured ship was injured after the commencement of the voyage, it is the duty of the owner to make the necessary repairs, if possible, and, if the vessel should be afterwards lost for the want of repairs, the insurers would not be liable, as the want of repairs would be the proximate cause of the loss, and not the peril insured against. SHAW, C. J., in commenting upon this case, in *Copeland* v. *New England Marine Ins. Co.*, 2 Met., 437, says, " it being settled to be the duty of the owners, even after a damage done to their vessel by one of the perils insured against, to put their vessel in a seaworthy condition, * * * * * as soon and as fully as it is in their power to do so; if they fail to do so, and if the vessel is afterwards lost under such circumstances, that the loss might be reasonably attributed, in whole or in part, to such want of repairs, then the actual cause of loss is the want of repairs, for which the assured are responsible, and not the sea damage, which caused the want of repairs, for which it is admitted the underwriters are responsible. For, in determining what losses are within the perils insured against, " *causa proxima non remota spectatur.*"

The case of *Hale* v. *Washington Insurance Co.*, 2 Story, 189, cited for the plaintiff, might, perhaps, lead to a different conclusion. But this case has been distinctly overruled by the Supreme Court of the United States, in *General Mutual Insurance Co.* v. *Sherwood*, 14 How., 351, (20 Curtis, 221.) This latter case we consider to be sustained by the

sounder reasoning, and, so far as it applies, sustains the view we have taken of the case at bar. The result is, that, for his loss, by the sale of his goods, the plaintiff must rely upon his contract with the carrier, and not upon that with his insurer.' The cases of *Powell* v. *Cudgeon*, 5 Maule & Sel., 431, and *Sargery* v. *Hobson*, 4 Bing., 131, are in point, and, though foreign authorities, seem to be well founded in principle and are cited with approbation by Chancellor KENT, in his Commentaries, vol. 3, (4th. ed.,) p. 302.

The conclusion to which we come upon the first point is more fully illustrated and confirmed, by the principles applicable to the second point raised by counsel; by which it is claimed that, if the defendants are not liable as for a total loss, for the full value of the property sold at Havana, they are at least responsible for the proportion of the general average, which the whole cargo would be subjected to, if an average had been made up at Havana. This depends, of course, upon whether the goods sold were chargeable to general or particular average. If to the former, it would seem to follow that the underwriters would be liable.; if to the latter, the party for whose benefit they were sold, would alone be liable. And here, again, arises the question already considered, was the sale caused by a peril of the sea? It should be remembered, that the peril of the sea was passed, the damage had been done, and still the cargo was safe. Now, to make property a subject of general average, it must have been sacrificed to avoid an impending peril, and for the benefit of all concerned. In this case it was sold to repair damage caused by a peril passed, and not for the benefit of all parties, but of one only. As we have already seen, it was the duty of the ship owner to make these repairs, and, what is quite as important in its bearing upon the question under consideration, the repairs made were permanent, such as were needful to the vessel, and of which the owner finally had the sole benefit. If the repairs had, from the necessities of the case, been merely temporary in their nature, made for the sole purpose of enabling the vessel to proceed

to a place of safety, or where repairs could be made to better advantage, or, if the money had been raised to pay the expenses caused by detention on account of a peril insured against, such as wages and provisions of seamen, loading and unloading of the cargo, or any other things from which the owners of the vessel received no particular advantage, but which were alike beneficial to all, and contracted to avoid threatening danger, such repairs and expenses, and the cargo necessarily sold to pay for such, would undoubtedly be the subject of general average. This distinction properly applied, it is believed, will reconcile all the authorities upon this question, although they are apparently somewhat contradictory.

Abbott, in his work on shipping, (4th ed.,) p. 349, recognizes this distinction, and remarks that, " expense incurred in port, in which the ship may have taken refuge during the voyage, by repairing the damage done to the ship by tempest alone, seems with more propriety to fall upon the owners, and is so held in the civil law, and by many foreign writers."

In *Plummer* v. *Wildeman*, 3 M. & S., 482, in speaking of the expenses necessary to enable a ship to proceed on her voyage, as being chargeable to general average, Lord EL-LENBOROUGH remarks, " but if any benefit *ultra* the removal of this incapacity should have accrued to the ship by repairs alone, inasmuch as that will redound to the particular benefit of the ship owner only, it will not come under the head of general average."

In *Padelford* v. *Boardman*, 4 Mass., 548, the same distinction is made, and distinctly settled. Also, in *Bedford Commercial Ins. Co.* v. *Parker*, 2 Pick., 8 — 9 ; *Brooks* v. *Oriental Ins. Co.*, 7 Pick., 268 ; Arnould on Insurance, 894, 895 ; *Thornton* v. *The United States Ins. Co.*, 12 Maine, 150, the allowance of general average is confined to the "expenses necessarily incurred during the detention for the benefit of all concerned," and does not include repairs to the vessel.

From the testimony in the case under consideration, it appears that all the expenses were for permanent repairs to the vessel and were ultimately for the benefit of the owner, and him alone. As such repairs, both from principle and authority, are excluded from general average, so must that part of the cargo sold to raise money to pay for them be excluded. The result is, that the defendants are not responsible for that part of the cargo sold at Havana, either as for a total loss, or in general average, but, for that part subsequently lost on French reef, they are responsible, and judgment must be rendered for the plaintiff for the value of his cargo, exclusive of the amount sold at Havana, which, from the evidence in the case, we determine to be the sum of two thousand and seventy-five dollars and seventy-nine cents, ($2075,79,) and interest thereon from Sept. 3d, 1862.

APPLETON, C. J., KENT, WALTON and BARROWS, JJ., concurred.