## INSURANCE COMPANY *v.* TRANSPORTATION COMPANY.

1. When two causes of loss concur, one at the risk of the assured and the other insured against, or one insured against by A. and the other by B., if the damage caused by each peril can be discriminated, it must be borne proportionably.
2. But if the damage caused by each peril cannot be distinguished from that caused by the other, the party responsible for the predominating, efficient cause, or that which set in operation the other incidentally to it, is liable for the loss.
3. An insurance upon a steamer against fire, "except fire happening by means of any invasion, insurrection, riot, or civil commotion, or of any military or usurped power," is an insurance against fire caused by collisions
4. Underwriters against fire are responsible for a loss occasioned by the sinking of a vessel insured when caused by fire (though the fire itself be the result of a collision not insured against), if the effect of the collision without the fire would have been only to cause the vessel to settle to her upper deck, and that be a case in which she might have been saved.

ERROR to the Circuit Court for the District of Connecticut; the case being thus:

The Howard Fire Insurance Company insured the steamer Norwich, owned by the Norwich and New York Transportation Company, for $5000 against fire. The policy covered the steamer, her hull, boilers, machinery, tackle, furniture, apparel, &c., whether stationary or movable, whether the boat should be running or not running, and insured against all such loss or damage, not exceeding the sum insured, as should happen to the property by fire, other than fire happening by means of any invasion, insurrection, riot, or civil commotion, or of any military or usurped power.

While on one of her regular trips from Norwich to New York, on Long Island Sound, the steamer collided with a schooner, the latter striking her on her port side, and cutting into her hull below the water-line, in consequence of which she immediately and rapidly began to fill with water. Within ten or fifteen minutes after the collision, the water reached the floor of the furnace, and the steam thereby generated blew out the fire, which communicated with the wood-work

of the boat. · Her upper works and her combustible freight were soon enveloped in flames, and they continued to burn half or three-quarters of an hour, when she gradually sunk in twenty fathoms of water, reeling over. The steamer was so constructed that her main deck was completely housed in from stem to stern, up to her promenade, or hurricane deck above. Her freight was stowed on the main deck, and her cabin and staterooms were on the hurricane deck. From the effects of the collision alone she would not have sunk below her promenade deck, but would have remained there suspended in the water, and would have been towed to a place of safety, when she, her engines, tackle, and furniture, could have been repaired and restored to their condition prior to the collision for the sum of $15,000, the expense of towage included. The sinking of the steamer below her promenade deck was the result of the action of the fire in burning off her light upper works and housing, thus liberating her freight, allowing much of it to drift away, whereby her floating capacity was greatly reduced, so that she sunk to the bottom, and all the damage which she suffered beyond the $15,000 above named as chargeable to the collision, (amounting to $7300), including the cost of raising the boat, was the natural and necessary result of the fire, and of the fire *only*.

The Transportation Company having set up a claim for indemnity against the Insurance Company, for a loss by fire within the policy, and the company declining to pay, suit was brought in the court below against it; and on the facts as already stated, and specially found as facts by the Circuit Court, judgment was given for the plaintiff. The Insurance Company brought the case here to reverse the judgment.

*Messrs. J. C. Carter and G. Pratt, for the plaintiff in error,* citing Mills on Causation, Brown's Inquiry into the Relation of Cause and Effect, Sir William Hamilton's Lectures, as well as numerous adjudged cases, in England and the United States, went into an ingenious and interesting though, as it struck the reporter, possibly somewhat metaphysical argu-

ment, on the subject of what was to be regarded as "the cause of any event;" how far the antecedents of a given event are connected together as the successive links in one chain; and how far there are several concurrent trains leading to the effect; concluding that in no case will the inquiry whether a given event would have happened but for another which preceded it, disclose the cause of the given event, or what is called its proximate cause, or its principal cause, or anything save this alone, that such preceding event was, or was not, a necessary contributing cause. The true meaning of the *causa causans*, the predominating cause, the series of successive causes, and of Lord Bacon's apothegm, *causa proxima non remota spectatur*, were considered at length; and the effort made to show that here—the sinking of the steamer, being the result of two concurrent causes, of which the collision was the predominating, and therefore the proximate cause—by a right application of the just rule of law, as established by the two well-known rules of Mr. Phillips, an authoritative text-writer on Insurance, the loss was attributable to the collision, and to that alone; a matter in which the Transportation Company was its own insurers; the policy having been but against fire.

Messrs. *J. A. Hovey* and *I. Halsey,* contra.

Mr. Justice STRONG delivered the opinion of the court.

Mr. Phillips, in his Treatise on the Law of Insurance, lays down two rules respecting the concurrence of different causes of loss, which the plaintiffs in error contend should be applied to this case, and which, if applied, they insist must lead to a reversal of the judgment in the court below.[*] The first of these is:

"In case of the concurrence of two causes of loss, one at the risk of the assured, and the other insured against, or one insured against by A., and the other by B., if the damage by the perils respectively can be discriminated, each party must bear his proportion."

---

[*] Phillips on Insurance, vol. i, §§ 1136, 1137.

The second is:

" Where different parties, whether the assured and the under-
writer, or different underwriters, are responsible for different
causes of loss, and the damage by each cannot be distinguished,
the party responsible for the predominating efficient cause, or
that by which the operation of the other is directly occasioned,
as being merely incidental to it, is liable to bear the loss."

These propositions may be accepted as correct statements
of the law, and the question before us is, whether the Cir-
cuit Court, in giving judgment for the assured, failed to
apply them rightly to the facts of the case.

The insurance in this case was against all such loss or
damage, not exceeding the sum insured, as should happen
to the property by fire, other than fire happening by means
of any invasion, insurrection, riot, or civil commotion, or of
any military or usurped power. Thus loss from fire hap-
pening in consequence of every other cause than those ex-
cepted was covered by the policy. The insurers took the
risk of fires caused by lightning, explosions, and collisions.
Such was the contract.

It is urged on behalf of the plaintiffs in error the findings
in the case establish that the sinking of the steamer, wherein
consisted principally the loss, or that part of it in excess of
$15,000 chargeable to the collision, was the result of two
concurrent causes, one the fire, and the other the water in the
steamer's hold, let in by the breach made by the collision.
As the influx of the water was the direct and necessary con-
sequence of the collision, it is argued that the collision was
the predominating, and, therefore, the proximate cause of
the loss. The argument overlooks the fact, distinctly found,
that the damage resulting from the sinking of the vessel was
the natural and necessary result of the fire only. If it be
said that this was but an inference from facts previously
found, it was not for that reason necessarily a mere legal
conclusion. But we need not rely upon this. Apart from
that finding, the other findings, unquestionably of facts,
show that neither the collision, nor the presence of water in

the steamer's hold was the predominating efficient cause of her going to the bottom. That result required the agency of the fire. It is found that the water would not have caused the vessel to sink below her promenade deck, had not some other cause of sinking supervened. It would have expended its force at that point. The effects of the fire were necessary to give it additional efficiency. The fire was, therefore, the efficient predominating cause, as well as nearest in time to the catastrophe, which not only directly contributed to all the damage done, after the steamer had sunk to her promenade deck, but enlarged the destructive power of the water, and rendered certain the submergence of the vessel. This plainly appears, if we suppose that the fire had occurred on the day after the collision, and had originated from some other cause than the collision itself. The effects of the prior disaster would then have been complete. The steamer would have been full of water, sunk to her promenade deck, and, remaining thus suspended, would have been towed to a place of safety and saved, in that condition, to her owners, except for the new injury. But the fire occurring on the next day, destroying the upper works and the housing; thus liberating the light freight and greatly reducing the floating capacity of the steamer, would have caused her to sink to the bottom as she did. In the case supposed the water would have been as truly a concurrent and efficient cause of the steamer's sinking, as it was in the case now in hand. It would have operated in precisely the same manner, remaining dormant until given new activity. But could there have been any hesitation in that case, in determining which was the proximate, the efficient, predominating cause of the sinking of the vessel? And can it be doubted that the underwriters against loss by fire would be held responsible for such a loss? Wherein does the case supposed differ in principle from the present, when the facts found are considered? True, the fire in this case was caused by the collision, but the policy insured against fire caused by collision. True, the fire immediately followed the filling of the steamer with water, or commenced while she was filling, but the effects of the

fire are conclusively distinguished from the breach in the steamer's hull, and the filling of her hold with water. The damages caused by the several agencies have been discriminated, and its proper share assigned to each. It is an established fact that the damaging effect of the water, independent of the fire, would not have reached beyond sinking of the steamer to its upper deck, when she would have been saved from further injury.

There is, undoubtedly, difficulty, in many cases, attending the application of the maxim, "*proxima causa, non remota spectatur,*" but none when the causes succeed each other in order of time. In such cases the rule is plain. When one of several successive causes is sufficient to produce the effect (for example, to cause a loss), the law will never regard an antecedent cause of that cause, or the "*causa causans.*"[*] In such a case there is no doubt which cause is the proximate one within the meaning of the maxim. But, when there is no order of succession in time, when there are two concurrent causes of a loss, the predominating efficient one must be regarded as the proximate, when the damage done by each cannot be distinguished. Such is, in effect, Mr. Phillips's rule. And certainly that cause which set the other in motion and gave to it its efficiency for harm at the time of the disaster must rank as predominant. In the present case, however, the rule hardly seems applicable, because the damage resulting from the fire and that caused by the filling of the steamer are clearly distinguished.

It is true, as argued, that as the insurance in this case was only against fire, the assured must be regarded as having taken the risk of collision, and it is also true that the collision caused the fire, but it is well settled that when an efficient cause nearest the loss is a peril expressly insured against, the insurer is not to be relieved from responsibility by his showing that the property was brought within that peril by a cause not mentioned in the contract.[†] The case quoted—

---

[*] General Mutual Insurance Company *v.* Sherwood, 14 Howard, 366.

[†] St. John *v.* The American Mutual Insurance Company, 1 Kernan, 519.

*St. John* v. *The American Mutual Insurance Company*—is instructive, and is, in one particular at least, responsive to the argument of the plaintiffs in error.  It exhibits the difference, in effect, between an express exception from a risk undertaken, and silence in regard to a peril not insured against. The policy, as here, was against fire, but it contained a provision that the company would not be liable "for any loss occasioned by the explosion of a steam boiler."   While it was in force there was an explosion of a steam boiler which caused the destruction of the property insured by fire.   It was held the insurers were not liable.   The proviso, or exception, was construed as extending to *fire* caused by such explosions, for, as the parties were contracting about the peril of fire alone, an *express* exception of all loss from explosions must have been meant to cover fire when a consequence of explosions, otherwise the exception would have been unmeaning.   But the court said, if nothing had been said in the policy respecting a steam boiler, the loss, having been occasioned by fire, as its proximate cause, would have rested on the insurers, though it had been shown, as it might have been, that the fire was kindled by means of the explosion. The judgment thus turned on the effect of an express exception.   Had there been none, the court would not have inquired how the fire happened, whether by an explosion or not.   In the case before us there is no exception of collisions, or fires caused by collisions.   It must therefore be understood that the insurers took the risk of all fires not expressly excepted.

It has been argued that because the policy was against fire only, the assured are to be considered their own insurers against perils of the sea, including collisions, and as insurers against marine risks are liable for collisions, with all their consequences, including fires, the assured in this case must be held to have undertaken that risk.   This would be so if they had taken out no policy against fire.   But that works a material difference.   Suppose these underwriters had insured the steamer against collisions and fire, and had then reinsured in another company against fire alone, as they

might have done, would it have been a sufficient answer to a suit brought by them against their insurers, that the fire which caused the steamer to sink was itself caused by a collision? No one will affirm that. Yet upon the theory of the plaintiffs in error, this is substantially what is now attempted Before any policy was issued, the Transportation Company were their own insurers against collisions and fire, no matter how caused. They sought protection against some of the possible consequences of these risks, and they obtained a policy insuring them against all loss by fire, except fire caused by certain things, of which collision was not one. Against every other consequence of a collision than a fire, they remained their own insurers, but the risk of fire was no longer theirs.

We have already sufficiently said that the amount of the loss caused by the collision, apart from the fire, was distinctly ascertained, and the insurers were not charged with it. So was the amount of loss caused by the fire itself ascertained. If therefore it was a case of the concurrence of two causes of loss, one at the risk of the assured, and the other of the insurers, the damage resulting from each has been discriminated, and the insurers have been held liable only for that caused by the peril against which they contracted.[*]

Judgment has therefore been given in conformity with the rules as above stated, in Phillips on Insurance. It is

AFFIRMED.

### NOTE.

At the same time with the preceding case was adjudged another, in error, from the same circuit, to wit, that of

---

[*] Vide Heebner v. Eagle Insurance Company, 10 Gray, 143.