## FAILING v. NATIONAL SURETY MARINE INS. CORPORATION.
### No. 11900.

Court of Civil Appeals of Texas. Galveston.
Oct. 9, 1947.

Rehearing Denied Oct. 30, 1947.

Andrews, Kurth, Campbell & Bradley, T. D. Anderson and F. L. Andrews, all of Houston, for appellant.

C. M. Hightower and W. D. Deakins, Jr., both of Houston (Vinson, Elkins, Weems & Francis, of Houston, of counsel), for appellee.

MONTEITH, Chief Justice.

This action was brought by Tweed Everett Failing for recovery of the alleged value of certain drilling equipment and apparatus under a policy of insurance issued by appellee, National Surety Marine Insurance Corporation. In a trial before the Court upon an agreed statement of facts, judgment was rendered in favor of appellee.

The record shows that appellant was the owner of certain well drilling equipment used in testing and sampling subsurface mineral structures, which was permanently mounted upon a Ford truck. While the equipment was being used for drilling in Polk County, Florida, certain cavities in the earth were encountered, which caused the breaking and caving in of the rocks immediately under the drilling equipment, resulting in the creation of a hole or cavity in the earth approximately 30 feet in diameter, into which the appellant's equipment sank, and was immediately covered with quicksand and water. The equipment, which could not be salvaged and was never recovered, was, at the time of the loss, covered by the policy of insurance sued upon to the extent of $3,000, and was of a value in excess of $3,000.

The policy sued upon is designated as a transportation policy, but by typewritten indorsement on the first page, the insuring agreement is expanded to cover not only losses which occurred while in transit, but "or otherwise within the limits of the continental United States and Canada."

Omitting its non-essential verbiage, the insuring agreement reads: "* * * * The company, in consideration of the stipulations named herein and premium of $2,231.31 insures Tweed Everett Failing * * * on * * * scheduled property * * * to an amount not exceeding $25,-000 in any one casualty, either in case of partial or total loss or salvage charges or expenses, or all combined, while in transit *or otherwise within the limits of the continental United States and Canada."*

On the occasion in question drilling had been commenced with said machinery and had proceeded to a depth of 346 feet. During the drilling operation the crew had encountered numerous cavities, and had decided to abandon the drilling at this location, and while the crew were pulling the drill pipe out of the hole, the earth caved in and created a pit, or crater, into which the drilling rig and the truck on which it was mounted sank to such a depth that it was impractical to remove them.

It was stipulated by the parties that there was no record of an earthquake at or near that point.

The policy of insurance contains 11 lettered sections enumerating certain risks, such as fire and lightning, explosions, cyclones, etc., and in addition to these enumerated risks, a typewritten rider attached to the policy contains certain express exceptions to the policy. Appellee insurance company does not contend that the cause of the loss in question falls within any of these exceptions.

It is conceded by appellant that the cave-in or cratering which caused the loss in question was not covered by any of the specific causes of loss enumerated in the

policy or in the provisions of the type-written page attached thereto—appellant relies on the decisions in the following cases in support of his contention that the loss in question was none the less a casualty as that word is used in the main insuring agreement, and that where a policy contains a general insuring clause such as one against fire or perils of the sea or collision, and such policy contains exceptions it will be construed to include all casualties resulting from the general risk insured against except those expressly excepted.

In the case of Howard Fire Insurance Company v. Norwich & N. Y. Transportation Company, 12 Wall. 194, 199, 79 U.S. 194, 20 L.Ed. 378, the insurance company insured the steamer Norwich against fire, other than fire happening by means of invasion, insurrection, riot, or civil commotion, or of any military or usurped power. As a result of a collision the vessel was partially filled with water, but would not have sunk, except for the fact that the fire caused by the collision admitted additional water, sinking the vessel. The Court held the loss to be covered by the policy. The Supreme Court, in its opinion, said: "It is true, as argued, that as the insurance in this case was only against fire, the assured must be regarded as having taken the risk of collision, and it is also true that the collision caused the fire, but it is well settled that when an efficient cause nearest the loss is a peril expressly insured against, the insurer is not to be relieved from responsibility by his showing that the property was brought within that peril by a cause not mentioned in the contract."

In the case of Union Insurance Company v. Smith, 124 U.S. 405, 8 S.Ct. 534, 545, 31 L.Ed. 497, the Supreme Court said: "The company is not released from liability by reason of the existence of any of the excluded conditions, but is released from such losses as are consequent upon and arise from or are caused by any o the specified, excluded causes. If, therefore, the vessel was subjected to a peril of the lake, and sustained loss which did not arise from, or was not caused by, some one of the excluded causes, the company was not released from liability."

In the case of Wood v. Southern Casualty Company, Tex.Civ.App., 270 S.W. 1055, 1056, the plaintiff's car was damaged through striking a rut, which threw it out of control and into a ditch. The policy insured against damage from "accidental collision with any other automobile, vehicle or object, excluding, however, loss or damage to any tire due to puncture * * * ." The Beaumont Court of Civil Appeals reversed and rendered the case, holding in its opinion: "There is nothing in the policy excepting from its liability damages occasioned by overturns or collision with portions of the roadbed. Doubtless appellant thought when he was buying the policy that it was intended by appellee to be, and was in fact, 'complete coverage' from damage other than the damages specially excepted in the policy. *Appellee did not write into the policy that it was exempt from liability for damages growing out of such occurrences as are here shown*, nor did it say as much to appellant when he was paying his money for 'complete coverage' protection held out to him under the policy purchase.

\* \* \* \* \* \*

*"We think that if the company, in framing its policies, had intended to exclude damages occasioned by overturns or collisions with portions of the roadbed, it would have written such exceptions into the policy.* Furthermore, we think that by its statement in the beginning in the wording of the policy, to wit, 'Complete Coverage Form,' it meant to convey to its patrons the idea that the policy was meant to and did cover all such damages as occurred by reason of such accidents as are shown in the instant case". (Emphasis ours).

In the instant case the policy on which the action is based insures against loss "while in transit *or otherwise*", the underscored words being specifically type-written into the policy. This, we think, had the effect of extending complete coverage, except as expressly limited by the exclusions. None of the exclusions extend, expressly or by limitations, to a casualty like that involved in this action.

The insuring clause in the policy in question is, we think, far broader than the

terms "fire" or "collision" used in the cited cases. In effect, it insures against any casualty while "in transit or otherwise".

In the case of Importers' & Exporters' Insurance Company v. Jones, 166 Ark. 370, 266 S.W. 286, 288, the Supreme Court of Arkansas had before it a case in which the plaintiff's car was lost while being driven from a ferry to a levee bank. The policy sued on covered the car while being transported in any conveyance by land or water against the stranding, sinking, collision, burning, or derailment of such conveyance. The ferry did not sink, burn, or strand. The Court, in its opinion, said: "When the subject-matter of the insurance and the language of the policy as a whole is considered, it certainly cannot be said that it was the intention of the company to limit its liability to the appellee for a loss or damage caused only by the sinking, collision, stranding, burning, and derailment of the conveyance in which the car was being transported, rather than the 'sinking,' etc., of the car itself. The words 'sinking,' etc., were words of enumeration or description of the manner of loss of the car rather than a limitation of the liability to the manner of the destruction of the vehicle or means of transportation. Such we believe to be the plain common sense meaning of the contract. Any other view would lead to the rather absurd conclusion that although the automobile was damaged or destroyed by 'sinking,' yet the appellant did not intend to be liable for such loss or damage unless the boat in which the car was being transported was also lost or destroyed by 'sinking,' etc. If such was the meaning of the appellant, it should have used phraseology that would express it in plain terms".

Applying the quoted opinion to the instant case, if appellee insurance company had intended to exclude cave-ins or cratering from the meaning of the word "casualty" as used in its insuring agreement, nothing could have been easier than for it to have used phraseology that would express it in plain terms.

■■ As stated in the opinion in the case of Wood v. Southern Casualty Company, supra, [270 S.W. 1056] "The language in the policy was selected and used by the insurance company to express the terms and conditions upon which the policy was issued. This being true, the rule is well established that the policy will be strictly construed against it, and liberally construed in favor of the insured. If the words used admit of two constructions, that construction will be adopted most favorable to the insured, and, further, the language used must be construed according to the evident intent of the parties to be derived from the words used, the subject-matter to which they relate, and the matters naturally or usually incident thereto. * * *

"Appellee did not write into the policy that it was exempt from liability for damages growing out of such occurrences as are here shown, nor did it say as much to appellant when he was paying his money for 'complete coverage' protection held out to him under the policy purchased. * * *

"Furthermore, we think that by its statement in the beginning in the wording of the policy, to wit, 'Complete Coverage Form,' it meant to convey to its patrons the idea that the policy was meant to and did cover all such damages as occurred by reason of such accidents as are shown in the instant case."

It follows from these conclusions that the judgment of the trial court must be reversed and, the facts having been stipulated by the parties, that judgment be rendered that appellant recover from appellee the sum of $3,000, together with interest thereon, and all costs in this behalf expended. It is so ordered.

Reversed and rendered.