The **AMERICAN INSURANCE COMPANY OF CITY OF NEWARK, NEW JERSEY, a corporation, Appellant,**

v.

**Thomas T. KEANE, Appellee.**

No. 12636.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 9, 1955.

Decided Jan. 26, 1956.

Petition for Rehearing In Banc Denied June 14, 1956.

---

Mr. John M. Aherne, New York City, with whom Mr. Richard W. Galiher, Washington, D. C., was on the brief, for appellant.

Mr. Thomas S. Jackson, Washington, D. C., with whom Messrs. Louis M. Denit, Martin R. Fain and Richard A. Bishop, Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN, WILBUR K. MILLER and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Appellee, Keane, sued on a marine insurance policy to recover sums he had been obliged to pay after his racing speed boat had collided with a small outboard

pleasure craft, owned by one Bowen. One occupant of the latter craft was killed and the other was injured. The trial judge denied a motion filed by appellant, the Company, for a directed verdict at the conclusion of all the evidence, and likewise overruled the Company's motions for judgment notwithstanding the verdict and for a new trial. The amounts paid by Keane in compromise of the claims against him were stipulated to be reasonable, and from the judgment for some $22,400, the Company has appealed.

June 5, 1949, appellee intended to race his boat in water tributary to Chesapeake Bay. His speed craft, capable of speeds up to 90 miles per hour, had not been functioning to his satisfaction, but after certain adjustment, appellee took the craft for a trial spin. When not under power, the boat lay flat on the water, but upon attaining a speed of some 15 to 25 miles per hour, it "planed," its bow out of water. Keane, operating the boat toward Chesapeake Bay, missed a guide buoy, presently realized his error, and then made a right turn which cleared his vision, previously obscured by the glare of sunlight on spray on his windshield. Having ascertained his position, he turned again, sharply, but the boat, then traveling about 35 to 40 miles per hour, skidded. By now, badly off course, Keane's boat was in waters where lay many small boats, carrying spectators. Up to this time, Keane had not seen the smaller Bowen craft some 200 feet ahead. Becoming aware of its presence, with his speed boat still skidding, he cut off the ignition by throwing a switch and also removed his foot from the accelerator, each of which actions, independently, would stop the operation of the motor. Such steps, designed to bring the craft out of the skid, occurred when Keane was a "little less than a hundred feet" from the outboard runabout. As he testified, in a matter of "four, five seconds" or "it may have been three or four seconds," the speed boat skidded broadside into the smaller craft. Both boats were severely damaged and sank, at or near the point of impact.

Appellee argued that the cause of the claims against him was his own negligence. Appellant argued that the claim was one expressly excepted from the policy coverage.[1]

The language of the policy upon which this case will turn reads:

"It is understood and agreed that *this insurance* is *free* from *claim for loss or damage*:

"1. During such time as the vessel's engine is operating.

"2. *Resulting from* the operation of the vessel's engine *whether caused by a peril insured against or not.*" (Emphasis supplied.)

Each side moved that a verdict be directed in its favor, appellant claiming that the engine of Keane's craft was either operating at the instant of collision; or the collision itself, on the physical facts, the testimony, and admissions of Keane, resulted from the operation of

1. Keane's testimony on cross examination here may help us understand the problem:

"Q. Now, it was the momentum imparted to the 'Tomadge IV' [Keane's craft] by the operation of the motor that brought you in contact with the Bowen boat; was it not? A. Yes, sir.

"Q. And if your engine had not been running immediately prior to the accident, the accident would not have happened; would it? A. No."

To counter such testimony, Keane's counsel, on redirect, developed the following:

"Q. Now, in response to a question asked by Mr. Aherne, you testified that if the engine had not been running, the accident would not have happened, the accident would not have happened. Let me ask you this: If you had steered your boat properly and if you had had a clear vision of the Bowen boat and the boats surrounding it, would the accident have happened? A. No.

"Q. Would you have been able to avoid the accident, regardless of the operation of the motors by steering past the Bowen boat? A. I would have.

"Q. Could you have steered past the Bowen boat if you had seen it as early as the moment you passed the Buoy S-6? A. Had I seen it then, I would have had plenty of time to miss it."

the vessel's engine. Both motions were denied.

The trial judge, without definition of proximate cause, submitted to the jury two interrogatories which may be summarized thus: (1) When the collision occurred, was the engine in Keane's craft operating? (2) Did the collision result from the operation of the engine in Keane's craft? The jury was told, at appellee's request, it was not to be concerned in the decision of these two questions with how the legal issue on the construction of the policy is answered by the court, "nor with the evidence bearing on the legal construction of it." [2] The jury answered both questions in the negative.

Certain additional background is necessary to an understanding of the case. During colloquy between counsel and the trial judge the latter said:

"The Court: This policy is very confusing to me. In the first part of it, where it lists the amount of damages for which they may be liable, that looks like the ordinary automobile policy.

"Mr. Aherne: It has very many elements, Your Honor, which are similar to the automobile policy, yes.

"The Court: And yet when it says here: 'This insurance is free from claim for loss or damage during such times as the vessel's engine is operating;' that would seem to nullify those provisions, because that would be ordinarily the time in which an accident would happen. (J.A. 44)

\* \* \* \* \* \*

"The Court: \* \* \* An extraordinary policy to me.

"Mr. Jackson: I think it is, sir.

"Mr. Aherne: Your Honor, it is a special type of policy, a tailor-made policy to fit an unusual situation.

"The Court: Well then, it would boil down simply to a question of whether this motor was operating; and your contention is that even if it wasn't, it was the result of the motors having operated.

"That is another question. I am trying to get the issues straight in my head." (J.A. 46)

At the close of the appellee's case appellant's counsel said:

"I think at this point it is a matter of construction of the language of the document for the Court; and I think Your Honor at this time should perform the function of construing the policy and should grant Defendant's motion to dismiss this action at this time." (J.A. 55)

The trial judge ruled:

"So I will let the case go to the jury, Mr. Aherne. You, of course, reserving the right to move at the

2. Appellant sought to introduce evidence as to rates in this type of risk, and as to the understanding of the parties generally, and of appellee, in particular, as to the coverage to be afforded by the policy. Such evidence was excluded upon objection by the appellee, although it came out that the policy in suit supplanted an earlier policy carried by the appellee, which provided that "insurance on the within named vessel ceases at the moment that the vessel is launched." Moreover, appellee testified he knew that under the instant policy he had no coverage *on the hull* when the engines were operating or for damage to the hull as a result of the operation of the engines. Appellee's insurance broker, his cousin, in a letter transmitting the in-

stant policy informed appellee: "This coverage is the same as you previously had, with the exception that at your request, we have added protection while loading and unloading from a crane or other means."

We need not decide, but may note that such evidence is generally admissible in a trial of all issues. Here the jury was asked merely, but improvidently as we shall develop, to answer the interrogatories above. See General Mutual Insurance Co. v. Sherwood, 1852, 14 How. 351, 55 U.S. 351, 362–363, 14 L.Ed. 452; Reed v. Insurance Co., 1877, 95 U.S. 23, 30–31, 24 L.Ed. 348; Standard Oil Co. of New Jersey v. United States, 1950, 340 U.S. 54, 60, 71 S.Ct. 135, 95 L.Ed. 68.

close of all the evidence and after judgment." (J.A. 59)

Having received the jury's answers to the interrogatories, the trial judge took the case under advisement and later filed his memorandum directing judgment for the appellee and overruling appellant's motions. We quote from the judge's memorandum with emphasis supplied:

*"During the operation of the speed boat a collision occurred* with another boat \* \* \*. (J.A. 11)

\* \* \* \* \* \*

"As to the liability of the plaintiff for the result of the collision, there is no question that his negligence was the proximate cause of the collision and his liability and the reasonableness of the amount paid in settlement of it is conceded, but the defendant contends that the fact that the plaintiff's boat had been put in motion by the engine constituted an additional or concurring proximate cause of the collision. *It is true that had the engine not imparted the original motion to the boat the collision would not have occurred,* but this fact seems to constitute rather a condition than a cause.

"It was not the negligent operation of the engine, nor any explosion of it nor defect in it that cause[d] the collision, but the cause of the collision was the negligent manner in which the boat was steered. In an ordinary collision between two automobiles, the cause of the collision is not the fact that the two cars were in motion imparted by their engines, but the manner in which the cars were driven.

"The verdict of the jury was in the negative in answer to the two issues, and I see no reason to disturb the verdict. After all that may be said, *the purpose of insurance is to insure."* (J.A. 12–13)

Enough has been said to indicate that the trial judge conceived the policy to be one covering such liability of the appellee as might arise from the operation of the speed boat. There is no question that as between Keane and the victims of the collision, Keane's negligence was the proximate cause of their loss. But the policy had expressly excepted this insurance from claim for loss or damage resulting from the operation of the vessel's engine, whether caused by a peril insured against or not. Even were we to say that the trial judge properly submitted the interrogatories to the jury,[3] there remained to him the power to make findings as to issues not submitted.[4] Thus his memorandum specifically finds that the collision occurred "during the operation of the speed boat" and "It is true that had the engine not imparted the original motion to the boat the collision would not have occurred \* \* \*." On the facts as thus found, quite apart from Keane's negligence in relation to the death and injury to the victims, *as between the insured and the appellant,* it is clear that the collision must be attributed to a cause "resulting from the operation of the vessel's engine."

Keane argues first, that we are bound by the findings of the jury in response to the interrogatories. Next, he here contends as he did in the trial court, "that the two limiting clauses which appear on the first page of the insurance document do not limit or restrict the liability of the insurance carrier under the provisions of the protection and indemnity clauses of the policy."[5] He

---

3. Fed.Rules Civ.Proc. rule 49(a), 28 U.S. C.A.

4. Columbia Horse & Mule Commission Co. v. American Ins. Co., 6 Cir., 1949, 173 F. 2d 773; 5 Moore, Federal Practice ¶49.-01 et seq. (2d ed. 1951).

5. The pertinent portions of the "P. and I." clause may be summarized thus:

"And we further agree that if the Assured shall by reason of his interest in the insured vessel become liable to pay and shall pay any sum or sums in respect of any responsibility, claim \* \* damages \* \* \* arising from or oc-

thus would have us say that the hull insurance was one contract and the protection and indemnity insurance another. The law is clear that for Keane to recover, he must bring himself within the terms of the policy.

Before any policy was issued, Keane was his own insurer on all accounts, as to collision, negligence, or any other type of risk which might result in claim for loss or damage, no matter how caused. He sought protection against some of the consequences of such risks. The Company agreed to accept all risks named in "this insurance," subject to the exceptions. Keane knew that the craft was in the water only 25 hours per year. The instant policy, subject to the exceptions, clearly covered claims for loss or damage due to fire, explosion, marine perils, windstorm, risks of transportation, and risks due to many other causes, whether the craft was afloat or ashore. Again subject to the exceptions, the policy even covered Keane's negligence in various particulars. But as to all possible claims for loss or damage, whether caused by a peril insured against or not, Keane remained, as before, a self-in-

surer *if the exceptions applied.*[6] Thus all risks were borne by the Company most of the time, but all risks were borne by Keane some 25 hours per year as to claims arising "during such time as the vessel's engine is operating" and as to claims "resulting from the operation of the vessel's engine." To paraphrase Mr. Justice Curtis, distinctions in the coverage of marine insurance contracts may sometimes be difficult to trace, and mistakes have doubtless been made in applying them. But such distinctions must be made as the *parties* made them. It is of no small consequence in the law of insurance that the courts ascertain and apply such distinctions, for to disregard them will inevitably produce confusion.[7]

Here was a craft which was lowered into the water by crane before each race and similarly removed afterward. It was transported on land from place to place as racing meets occurred. Using high octane gasoline, it was subject to overheating and explosion if run too long at speeds less than 20 miles per hour. Having attained such speed, it planed, its bow out of water, and, thus operated, was capable of speeds up to 90

casioned by any of the following matters * * * during the currency of this Policy in respect of the vessel hereby insured, that is to say:—
"(1) Loss of or damage to any other vessel. * * *
* * * * * *
"(11) Loss of life or personal injury. * * * we will pay the Assured such sums so paid or which may be required to indemnify the Assured for such loss; Pro-

vided always that the liability of this Company, in respect to any one person, is limited to the sum stated as 'Personal Injury Any One Person' in the schedule of policy limits above and subject to the same limit for each person, to the sum therein stated as 'Personal Injury Any One Accident,' it being understood that this limit applies to any one accident or series of accidents arising out of the same event. * * * *"

The schedule of policy limits reads:
"This insurance is limited to those Coverages indicated below and opposite which a premium is specified.
"For Hull $7,000.00 Rate Chg. % Premium $ 70.00
"For Protection and Indemnity (including Longshoremen's and Harbor Worker's Compensation)
 $25,000.00 Property Damage
 $25,000.00 Personal Injury,
 Any One Person Premium $ 37.50
 $50,000.00 Personal Injury,
 Any One Accident

Total Premium $107.50"

**6.** Insurance Co. v. Transportation Co., 1870, 12 Wall. 194, 79 U.S. 194, 201, 20 L.Ed. 378.

**7.** See General Mutual Insurance Co. v. Sherwood, 1852, 14 How. 351, 55 U.S. 351, 365, 14 L.Ed. 452.

miles per hour. Of light construction, skimming along the surface, it was subject to possible skids if turned too abruptly, as occurred in this very case. No, doubt, the policy here involved was special and peculiar to the craft and the purposes for which it was utilized. The parties accordingly agreed that whether a claim was caused by a peril insured against or not, if that cause be one "resulting from the operation of the vessel's engine," the carrier shall not be liable, and Keane in that circumstance and to that extent remained a self-insurer. Thus "we must look beyond the peril to its cause, to ascertain the efficient cause of the loss," [8] whether it be one "resulting from the operation of the vessel's engine," or not. What will be our test?

 Whether a peril be one insured against, or one within an exception and hence not covered, the courts have determined the ultimate liability on the basis of the maxim, *causa proxima, non remota, spectatur*. Where separate and successive causes can be "discriminated," a proper share of the loss is assigned to each insurer.[9] When there are two concurring causes of a loss, "the predominating efficient one must be regarded as the proximate, when the damage done by each cannot be distinguished."[10] Where a peril insured against finds its cause in one not covered, as within an exception in the policy, it has been held that the carrier is not liable.[11] In the Richelieu case the Court approved a charge that a defective compass as constituting unseaworthiness, and the facts that the steamer was running at full speed through heavy fog when an inadequate watch was maintained as constituting negligence, could be said to be causes not covered where the policy excepted liability for unseaworthiness or negligence. Then there is the line of cases where the courts were asked to ascertain the cause of loss as between "perils of the sea," marine risks, and "warlike operations," as war losses, under war risk insurance contracts, most recently illustrated in the Standard Oil case.[12]

Running throughout all such cases we find the test to lie in the determination of the proximate cause of the claim for loss or damage. Unlike the cases cited, however, we here find that the parties expressly agreed that whether the claim was caused by a peril insured against or not, "this insurance" was to be free from claim for loss "resulting from the operation of the vessel's engine."

Thus, whether the collision or Keane's negligence was a peril insured against or not, or whether the former was caused by the latter, becomes immaterial. What is critical is whether the claim was one "resulting from" the operation of the racing boat's engine.

We have found no case squarely in point and none has been cited to us. But by analogy from what has been said, we see no reason why the words "resulting from" should not be held flatly to mean what the parties would reasonably expect and understand them to mean. The verb "result" is defined: "To proceed, spring, or arise as a consequence, effect, or conclusion."[13] Thus if the claim proceeds from or arises as a consequence of or is occasioned by the operation of the vessel's engine, it is one "resulting from" such operation. And we likewise see no good reason why the test of proximate cause should not here be applied.

 We therefore seek "the efficient cause, the one that necessarily sets the

8. Ibid.

9. Insurance Co. v. Transportation Co., supra, 1870, 12 Wall. 194, 79 U.S. 194, 20 L.Ed. 378.

10. Id., 79 U.S. at page 199.

11. Richelieu & O. Nav. Co. v. Boston Marine Ins. Co., 1899, 136 U.S. 408, 10 S.Ct. 934, 34 L.Ed. 398.

12. Standard Oil Co. of New Jersey v. United States, 1950, 340 U.S. 54, 71 S. Ct. 135, 95 L.Ed. 68.

13. Merriam-Webster New International Dictionary (2d ed. 1953).

other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result." [14]

■ That the operation of the speed boat's engine set in motion every force involved in this catastrophe cannot be doubted. Though Keane's negligence concurred, or even if it supervened, it was incidental, for the operation of the engine was the predominant, efficient causative factor of the claim for loss or damage. Upon principle and authority, the claim made by Keane was one "resulting from" the operation of the engine, and hence was specifically within the exception in the policy. It is our duty so to rule as a matter of law where the language is clear and where the facts so unerringly bring the case within its compass.[15]

■ But, Keane argues further, the policy on its second page set out the "Protection and Indemnity Clause" to which the typewritten exceptions on the first page do not apply.[16] In any event, he continues, the hull contract on the first page and the "P and I" clauses form two separate and distinct contracts, the latter unmodified by the exceptions. These claims must fall upon a reading of the policy as a whole. At the foot of the first page, in large type, the policy reads: "Protection and Indemnity and Longshoremen's and Harbor Worker's Compensation Clauses on Reverse Hereof." The amount and type of coverage, the premium to be charged, the limitations of liability and such terms appear on the face of the policy as do the exceptions in issue. The "P and I" clauses on the second page are inextricably linked with the former, indeed the contract is countersigned at Washington and dated by the Company's authorized agent at the foot of the second page *after* the "P and I" clauses and following a paragraph which reads:

"This policy is made and accepted subject to the stipulations and conditions contained in the form hereto attached, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this Company shall have power to waive or be deemed to have waived any provision or condition of this policy unless such waiver be written upon or attached

---

14. Insurance Co. v. Boon, 1877, 95 U.S. 117, 130, 24 L.Ed. 395, cited with approval in The G. R. Booth, 1898, 171 U.S. 450, 456–457, 19 S.Ct. 9, 43 L.Ed. 234; and see Chief Justice Hughes writing in Lanasa Fruit Steamship & Importing Co. v. Universal Insurance Co., 1938, 302 U.S. 556, 562 et seq., 58 S.Ct. 371, 82 L.Ed. 422.

15. Cf. Williams v. Union Central Life Ins. Co., 1934, 291 U.S. 170, 180, 54 S.Ct. 348, 78 L.Ed. 711; and see Columbia Hospital for Women and Lying-In Asylum v. United States Fidelity & G. Co., 1951, 88 U.S.App.D.C. 251, 256–257, 188 F.2d 654, 659–660.

16. Keane's argument, if accepted, thus would compel the conclusion that if his negligence gave rise to the claims, it is immaterial whether the vessel's engine was operating or whether the claims resulted from the operation of the engine. Writing the exceptions into the policy would thus prove to be an inane

gesture, for though the craft be driven by its engines at 90 miles per hour, if Keane's negligence be the cause of a claim, he would be protected against liability. It does not seem possible he can seriously urge such a proposition. It may be noted as to the earlier portion of the opinion, he has cited various cases such as Ball v. Sun Life Assur. Co., 7 Cir., 1944, 141 F.2d 456, 155 A.L.R. 1014, certiorari denied, 1944, 323 U.S. 723, 65 S.Ct. 55, 89 L.Ed. 581. Appellant has cited conversely Order of United Commercial Travelers v. King, 4 Cir., 1947, 161 F.2d 108, affirmed 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608, rehearing denied, 1948, 333 U.S. 878, 68 S.Ct. 900, 92 L.Ed. 1153. We have not deemed apposite cases construing "status" clause and "result" clauses in policies such as were considered in such cases, in view of the body of law which has developed in the field of marine insurance.

hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the Assured unless so written or attached."

We are not empowered to make a new contract for the parties. It is clear from the one before us that the exceptions applied throughout. Granting to the appellee every favorable intendment to be deduced from the facts, the law commands a judgment for the insurer. The appropriate motions for a directed verdict and for judgment n. o. v. having been made in the District Court, we are constrained to conclude that the judgment should be reversed and that judgment be entered for the appellant.

Reversed.

WILBUR K. MILLER, Circuit Judge, dissents.